Elfunzell PENAGRAPH, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 59400.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 23, 1981.

Rehearing Denied Nov. 25, 1981.

Ross Teter, Dallas, for appellant.

Henry Wade, Dist. Atty., T. Michael Sutton, and Winfield Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS, J.

## OPINION

ONION, Presiding Judge.

This is an *appeal from* a conviction for *burglary* of a building. The jury assessed punishment at twenty (20) years' imprisonment.

Appellant has advanced a number of grounds of error including a challenge to the sufficiency of evidence to sustain the conviction and a claim that the State was improperly permitted to impeach a defense witness with "Have you heard" questions when such witness was not a reputation witness. We agree with this latter contention and reverse. In light of the holdings in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), we shall also discuss the sufficiency of the evidence and shall do so initially.

A burglary occurred at Ben McLemore's house in Duncanville on February 15, 1977. McLemore's 13-year-old daughter opened the door to two men, was bound hand and foot, and was rendered unconscious. Her 18-year-old sister locked herself in the bathroom during the duration of the burglary. From the bathroom window she observed two men in the driveway and another person driving a U-Haul van. She saw the van back into the McLemore's mailbox as they left the premises. Neither sister was able to identify the appellant as one of the burglars.

The burglars absconded with 25 out of 29 paintings which McLemore was attempting to sell for a prominent and wealthy businessman from Mexico. The asking price of the paintings exceeded $1.2 million dollars, although McLemore admitted an art expert had told him the paintings, purportedly works of Picasso, Goya, and other famous artists, were fakes. No other items were taken from McLemore's house.

A joint investigation by the Duncanville police and the F.B.I. uncovered the fact that a U-Haul van had been rented on the day of the offense to Elfunzell Penagraph, Jr., appellant's son. Two other men accompanied the renter, one considerably older than the others, at the time of the rental. An expert determined that, in his opinion, a paint scraping from the returned van came from the McLemore mailbox.

Appellant's son was arrested on February 22, 1977. The next day appellant called Chief D. H. McElroy of the Duncanville Police and requested a meeting. That night McElroy and Detective Bobby Moore met appellant and his girl friend in the parking lot of a furniture store.

McElroy and Moore testified that at such meeting appellant admitted he, his son and Robert Maloy were the "actual burglars" but gave the officers the names of three other men who planned the McLemore burglary, and showed them the residence of one of these men. Appellant was not arrested or detained thereafter. The next day appellant went to the Duncanville police station at the request of the police. An interview was taped and appellant and his son each signed a transcript of the interview concerning the McLemore burglary. Appellant was again allowed to leave. He was arrested on March 3, 1977.

Ema Jean Smith testified for the defense. She said that she was with the appellant when he met officers McElroy and Moore on February 23, 1977, at the furniture store and that all four sat in a police vehicle. She related statements and promises made by the officers and testified that appellant admitted only that he was "there" and not that he participated in the burglary.

Appellant's son, Elfunzell Penagraph, Jr., testified for the defense. He related a relative had put him in contact with a Mexican police official who stated he was working with the F.B.I. and who wanted him to recover, for a fee, the paintings from McLemore as McLemore had refused to return the paintings to their owner in Mexico. He stated his father, the appellant, discouraged him from participating in the burglary. He admitted his father was present at the scene of the burglary, but only entered the McLemore's house to tell him and Maloy "Hurry up, let's get out of here." The son testified he gave part of the fee he received for the burglary to his father, the appellant, so Maloy wouldn't know he (the son) was getting more than Maloy, but that appellant had returned the money immediately.

It is well settled that when the sufficiency of the evidence is challenged, the evidence is to be viewed in the light most favorable to the verdict. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony. See *Lafoon v. State*, 543 S.W.2d 617 (Tex.Cr.App.1976); *Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974); *Mills v. State*, 508 S.W.2d 823 (Tex.Cr.App. 1974).

We conclude the evidence was sufficient to sustain the conviction and upon remand a re-trial is not prohibited. *Burks v. United States*, supra, and *Greene v. Massey*, supra.

We now turn to appellant's contention that one of his defense witnesses was improperly impeached.

Ema Jean Smith was a fact witness for the defense at the guilt stage of the trial. As earlier noted, she testified as to the conversation appellant had with officers McElroy and Moore on the night of February 23, 1977. She testified, among other things, the officers told appellant that if he cooperated in the recovery of the paintings and made a statement that his son's bail would be reduced so he could make bond and that the son would get two years' probation, and that no charges would be filed against the appellant.

Further on direct examination she testified she had known the appellant all her life and had lived in Dallas County all her life except for a period she lived in California but she had returned to Dallas in December of 1972. The record then reflects:

"Q I'll ask you whether or not you saw him (appellant) on a regular basis from the time you returned from California in December of '72?

"A Yes.

"Q How often have you seen him since that time?

"A Almost every day, every other day, whatever.

"Q  Continuously since December of 1972, is that correct?

"A  Yes.

"Q  He hasn't lived outside of Dallas County or anything like that during that period of time?

"A  Not that I know of.

"Q  Of course you know he was in jail on this case earlier?

"A  Right.

"Q  I'll ask you whether or not you know—you have any knowledge as to whether or not he is a working man?

"A  Yes.

"Q  Does he—do you know what kind of work he does?

"A  He was doing construction work.

"Q  Is that the same kind of work he has been doing since December of 1972?

"A  Yes.

"Q  Does he spend considerable time with his mother?

"A  As far as I know, yes.

"Q  And his son, as far as you know? .

"A  Yes.

"Q  Is it a close family?

"A  Yes, they are.

"Q  Has he always treated you okay?

"A  Fine.

"Q  Never stole any of your paintings, has he?

"A  No."

Prior to cross-examination the State announced to court, in the absence of the jury, that on the basis of the above mentioned direct examination it intended to ask the witness "have you heard" questions concerning appellant's criminal record. The State conceded that the appellant hadn't used the "magic words" or asked the usual question so as to place reputation in issue, but insisted the foregoing on direct examination had placed reputation in issue. Appellant vigorously objected to the State being allowed to ask if the witness had heard of specific unrelated acts of misconduct, that Smith was a fact witness, and the foregoing direct examination had not transformed her into a reputation witness for the defense. The court overruled the objection.

On cross-examination the State was permitted to ask Smith:

"Q  Have you heard on March 19, 1956 in Dallas County Elfunzell Penagraph, Sr., the Defendant here in this trial committed robbery by assault and violence on Anthony Carl Hardin and was sent to the penitentiary for five years?

"A  No.

"Q  You haven't heard that?

"A  No.

"Q  Well, if you had heard that would that change your opinion about some of the things you just got through telling the Jury about, for instance had he ever stolen any paintings from you?

"A  Well, I don't know.

"Q  Well, have you heard on November 9, 1958 in Dallas County, Texas, that Elfunzell Penagraph, Sr., the Defendant here on trial, committed robbery by assault and violence on the person of Raymond Jones and was sent to the pen for twenty-five years?

"A  No, I didn't hear that.

"Q  Well, have you heard that on September the 10th, 1960 in Dallas County, this Defendant, Elfunzell Penagraph, Sr., committed robbery by assault and violence on Irby H. Penn and was sent to the pen for life.

"A  No.

"Q  Have you heard that in the late Fifties or Sixties in Safford, Arizona this Defendant Elfunzell Penagraph, Sr. committed a second degree burglary and was sentenced to eighteen months probated?

"A  No.

"Q  Have you heard that he is presently, this Defendant Elfunzell Penagraph, Sr., is presently on life parole for robbery by assault?

*     *     *     *     *     *

"A  Have I heard it?

"Q  Yes, have you heard that?

"A  Yes.

"Q  Okay. Now, are you the one that was introduced to McElroy, Chief McElroy and Lieutenant Moore as the girlfriend of Penagraph, Sr.?

"A  Yes.

"Q  Now, Penagraph, Sr. is married, isn't he?

"A  Well, he was—his wife is deceased.

"Q  Are you saying he is not living with his wife at the present time?

"A  She is dead."

*Brown v. State*, 477 S.W.2d 617, 619, 620 (Tex.Cr.App.1972), discussed the rationale of the rule which permits the State to ask a reputation witness about specific acts of misconduct of the accused.

Under such rule the State contends it was entitled to ask the "have you heard" questions on cross-examination even though the appellant did not use the "magic words" or ask the usual question normally put to a reputation witness. The State relies upon *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App. 1973), and cases following it. See, e. g., *Salazar v. State*, 494 S.W.2d 548 (Tex.Cr. App.1973); *Navajar v. State*, 496 S.W.2d 61 (Tex.Cr.App.1973); *Howard v. State*, 505 S.W.2d 306 (Tex.Cr.App.1974); *Partida v. State*, 506 S.W.2d 209 (Tex.Cr.App.1974); *Hurd v. State*, 513 S.W.2d 936 (Tex.Cr.App. 1974); *Mitchell v. State*, 517 S.W.2d 282 (Tex.Cr.App.1974).

In *Childs* the defendant sought probation. During the penalty stage of the trial the defendant's father testified that if the defendant was granted probation he would keep the defendant home, employ him, supervise his conduct and assist him in exemplary conduct. The father also testified the defendant's conduct had been since he had been at home. On cross-examination the father was asked, over objection, if "he had heard" that his son had been indicted for robbery and for possession of marihuana and was living with a prostitute who was also a heroin addict. Childs contended his questions on direct examination did not make his father a reputation witness.

The Court in *Childs* stated the father's testimony was geared towards persuading the jury to grant probation to the defendant and held:

"Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community .... " *Childs v. State*, supra at 909.

In *Ward v. State*, 591 S.W.2d 810, 818 (Tex.Cr.App.1978) (Opinion on motion for rehearing), overruled *Childs* pointing out that the fallacy in the *Childs* rule is that it ignores the difference between character and reputation. In *Ward* the court wrote:

"Since the purpose of a have you heard question is to test the witness who purports to be familiar with hearsay and rumors of the accused's reputation, a witness who has not professed to be familiar with that reputation in the community could not logically be discredited by questions of whether he has heard other rumors of acts inconsistent with that reputation. Simply stated, there is no reasonable basis for asking have you heard questions of a witness who testifies to his personal opinion of someone's character, as opposed to the reputation of that person's character. Since appellant's wife was not testifying to his reputation, no have you heard questions to test familiarity with that reputation should have been allowed." See *Brown v. State*, 605 S.W.2d 572 (Tex.Cr.App.1980), and cases there cited.

■  Ema Jean Smith was not a reputation witness by her interrogation on direct examination and the State should not have been permitted to have asked have you heard questions to test familiarity with the reputation for being a peaceful and law-abiding citizen. To do so could only have served to prejudice the jury at the guilt stage of the trial by showing rumors of inadmissible acts of misconduct by the appellant.

For the error observed, the cause is reversed and remanded.