**Robert Earl WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–94–00046–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 6, 1994.

Decided Nov. 9, 1994.

Rehearing Overruled Nov. 29, 1994.

Ebb B. Mobley, Longview, for appellant.

David Brabham, Crim. Dist. Atty., C. Patrice Savage, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Robert White appeals from convictions for possession of marihuana and possession with intent to deliver cocaine, which arose out of the same criminal episode. The main issues before us concern the legality of a search for and seizure of the cocaine and the sufficiency of the evidence to support the conviction. We resolve most issues in favor of the State, but conclude that the evidence is factually

insufficient to show that White possessed cocaine. Therefore, we affirm the judgment of conviction of possession of marihuana, but as to the possession of cocaine, we reverse and remand the cause to the trial court.

## SEARCH AND SEIZURE

■ White's attorney at trial sought to suppress the cocaine because the search that revealed the cocaine violated White's rights under the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The essence of the complaint concerns the fact that the search warrant authorized a search of a house at 306 Walnut Street in Longview, Texas, a residence owned by White, among others, and the cocaine was found in a vacant lot at 310 Walnut Street. The house at 306 Walnut has a privacy fence separating it from the vacant lot next door, which is not owned by White. Facially this position appears sound in that the cocaine was found on property that was not authorized to be searched. The Fourth Amendment protects individuals from unreasonable searches and seizures that intrude on reasonable expectations of privacy. *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112, 120–21 (1990). However, as cogently pointed out by White, the area where the cocaine was found was not part of White's house or yard, but was in a vacant lot next door. Although the Fourth Amendment accords special protection to people in their persons, houses, papers, and effects, that protection is not extended to open fields. *Hurwitz v. State*, 673 S.W.2d 347, 349 (Tex.App.–Austin 1984), *aff'd*, 700 S.W.2d 919 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). The term "open field" may be defined as any unoccupied or undeveloped area outside the curtilage of a dwelling. *Beasley v. State*, 683 S.W.2d 132, 133 (Tex.App.–Eastland 1984, pet. ref'd). Curtilage is a common-law concept referring to the area immediately adjacent to the home to which the intimate activity of home life extends. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214, 225 (1984).

■ When the officers arrived at 306 Walnut, they saw White, along with several other persons, in the vacant lot. Another person was working on a fence around the vacant lot at 310 Walnut. The officers arrested White and his brother, Ronald White, and took them to the residence at 306 Walnut, whereupon the search of the residence commenced. Marihuana and drug paraphernalia were found inside the house. After that search, the officers went to the vacant lot at 310 Walnut. There was a boat on the lot. In the bow of the boat the officers found a tackle box that contained the cocaine.

We conclude that White had no expectation of privacy in the vacant lot because the vacant lot was not part of his residence or its curtilage. The State did not deny White his rights under the Fourth Amendment or Article I, Section 9 of the Texas Constitution.

## SUFFICIENCY OF EVIDENCE

■ We now turn to an analysis of the challenge to the sufficiency of the evidence. Because of the nature of the points of error, we consider that White has challenged the evidence as being both legally and factually insufficient to support his conviction. In determining whether evidence is legally sufficient to support a judgment, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 155 (Tex.Crim.App.1991). Our exclusive fact jurisdiction under the constitution also both permits and requires us to review for the factual sufficiency when the sufficiency of the evidence is challenged on appeal. *Williams v. State*, 848 S.W.2d 915, 916–17 (Tex.App.–Texarkana 1993, no pet.); *Stone v. State*, 823 S.W.2d 375, 377 (Tex.App.–Austin 1992, pet. ref'd, untimely filed); *see also* TEX. CONST. art. V, § 6. In determining whether the evidence is factually sufficient, we must decide, after considering all the relevant evidence, whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See*

*Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim.App.1990). In our review of the evidence, however, we are mindful that a jury is the exclusive judge of the credibility of the witnesses and may reject any or all of any witness' testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

■ Having set out what we view as the correct standards for review of sufficiency of the evidence challenges, we are aware that there is disagreement among the intermediate appellate courts of this state about whether appellate courts have authority to review the factual sufficiency of the evidence in criminal cases. Our conclusion that we are authorized and even mandated to review for factual sufficiency is grounded squarely on the Texas Constitution. It provides that decisions of courts of appeals "shall be conclusive on all questions of fact brought before them on appeal or error." TEX. CONST. art. V, § 6. This jurisdiction to review questions of law and of fact applies in civil and criminal cases. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 648–49 (Tex.1988) (citing *Republic v. Smith*, Dallam 407, 410–11 (Tex. 1841)).

■ Recently, the Dallas Court of Appeals has written the following concerning the constitutional mandate:

Intermediate appellate courts in Texas have no inherent power to ignore an express constitutional mandate. *Queen v.*

*State*, 842 S.W.2d 708, 711 (Tex.App.– Houston [1st Dist.] 1992, no pet.). The courts of this state are bound to follow the will of the people of this state, as that will is expressed by the people in the constitution and in the laws enacted by their duly elected representatives. *Id.* Furthermore, the legislature has expressly authorized the courts of appeals to review fact questions in criminal cases. TEX.CODE CRIM.PROC.ANN. art. 44.25 (Vernon Supp. 1994). We conclude that the above constitutional and statutory provisions provide this Court with *appellate* jurisdiction to *review* fact questions.

*Clewis v. State*, 876 S.W.2d 428, 430 (Tex. App.–Dallas 1994, pet. granted). We agree with the conclusion of the Dallas Court of Appeals that we have jurisdiction to review fact questions, but we must disagree with the Dallas court's holding that, despite having this jurisdiction, the standard set out in *Jackson v. Virginia* is the sole standard for reviewing the sufficiency of the evidence to establish the elements of a criminal offense.[1] *See id.* at 439.

The constitutional article has always been interpreted by the Texas Supreme Court as providing appellate courts jurisdiction over fact questions. *See Cropper*, 754 S.W.2d at 648–49 (thorough discussion of cases from 1841 to 1988 which uphold the right of appellate courts to review fact questions). For most of its existence, the court of criminal

---

**1.** We disagree with the Dallas court's determination that there is only one standard because that holding is based on unsound reasoning. Justice Lagarde, author of the majority opinion in *Clewis*, opines that for the appellate court to use a standard less deferential than that established in *Jackson v. Virginia* would usurp the function of the jury and violate a criminal defendant's right to trial by jury. This ignores the fact that, as in criminal cases, a jury in a civil case is also the exclusive trier of facts and sole judge of the credibility of the witnesses, yet the Supreme Court of Texas has reconciled the right to a jury trial with the courts of appeals' jurisdiction to review jury findings for factual sufficiency. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986). Justice Lagarde also suggests that a factual sufficiency standard of review is incompatible with the higher burden of proof that must be met in a criminal trial. As noted by Chief Justice McGarry in his concurring

opinion in *Clewis*, merely because the State must prove its case "beyond a reasonable doubt" does not preclude the adoption of a factual sufficiency standard of review different from the minimum legal sufficiency standard dictated by *Jackson v. Virginia*. *See Clewis v. State*, 876 S.W.2d 428, 444 (Tex.App.–Dallas 1994, pet. granted) (McGarry, C.J., concurring).

The Dallas court expressed concern that to remand a criminal case on the ground of factual insufficiency violates the concept of double jeopardy. Retrial of a defendant who has successfully appealed his conviction is not automatically prohibited. *Meraz v. State*, 785 S.W.2d 146, 156 (Tex.Crim.App.1990). According to the United States Supreme Court, retrial is prohibited under the Double Jeopardy Clause only in those cases where there is legally insufficient evidence to support a conviction. *See Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652, 661–62 (1982), *followed in Meraz*, 785 S.W.2d at 156.

appeals has also recognized the constitutional provisions granting appellate courts fact jurisdiction. *See Bigby v. State,* No. 71,234, slip op. at 6, 1994 WL 595213 (Tex.Crim.App. Nov. 2, 1994).

As is evidenced by the extensive majority and concurring opinions in the *Clewis* decision, the precise effect of the conclusivity clause has been troublesome for Texas courts. The problem arose in 1982 when the court of criminal appeals decided the case of *Combs v. State,* 643 S.W.2d 709 (Tex.Crim. App.1982). Combs was convicted of murder, and the court of appeals had found the evidence factually insufficient to support the conviction. The court of criminal appeals acknowledged that if sufficiency of the evidence is a fact question, then courts of appeals' determinations of those issues would be binding on it. 643 S.W.2d at 714 (citing TEX. CONST. art. V, § 6). The court proceeded to note that it did not have jurisdiction to pass on fact questions and, without explanation, determined in a footnote that it "perceived no other standard may be utilized" by courts of appeals. *Combs,* 643 S.W.2d at 715, 716 n. 1.

Following *Combs,* the appellate courts have struggled with and debated with each other about conclusivity-related questions. *See* Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 ST. MARY'S L.J. 423 (1991) (chronicling this struggle and debate). Without reviewing the numerous cases from 1982, when *Combs* was decided, it can be said that Judge Duncan's 1990 *Meraz* opinion represented a full-circle turn away from *Combs.* The incisive opinion ably viewed the Texas Constitution and the courts' roles thereunder.[2] To avoid any danger of misconstruction, certain cogent parts of Judge Duncan's opinion are quoted:

> The court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the Constitution. [785 S.W.2d at 154.]
>
> . . . .
>
> ... Moreover, when the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of the evidence, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Therefore, *Van Guilder v. State,* supra [709 S.W.2d 178 (Tex.Cr.App.1985)]; *Schuessler v. State,* supra [719 S.W.2d 320 (Tex.Cr.App.1986)]; *Arnold v. State,* supra [719 S.W.2d 590 (Tex.Cr.App.1986)]; and their progeny are overruled. Furthermore, footnote 1 in *Combs v. State,* supra, is disavowed.
>
> . . . .

Any reading of the quoted language makes it obvious that this Court has expressly recognized that the then courts of civil appeals had the jurisdiction to consider the great weight and preponderance of evidence questions. Moreover, the Court expressly recognized that such jurisdiction was exclusively with the courts of civil appeals to the exclusion of the Supreme Court. In addition, it endorsed the Su-

---

2. Even before *Meraz,* several judges on the court of criminal appeals indicated a willingness to hold that the courts of appeals have jurisdiction to consider challenges to the factual sufficiency of the evidence supporting a criminal conviction. *See e.g., Moreno v. State,* 755 S.W.2d 866, 870 n. 5 (Tex.Crim.App.1988) (Clinton, J., concurring) (Clinton, in an opinion joined by Judge Duncan, hinted at willingness to consider courts of appeals' constitutional authority to review great weight and preponderance points); *id.* at 873 (Teague, J., dissenting) (reiterating need to review issue of constitutional authority of the courts of appeals to review fact issues); *Gold v. State,* 736 S.W.2d 685, 699 (Tex.Crim.App.1987) (Teague, J., dissenting) (asserting that it is time to reconsider authority of the intermediate appellate courts to perform factual sufficiency review); *Hill v. State,* 719 S.W.2d 199, 203–04 (Tex.Crim. App.1986) (Clinton, J., dissenting) (Clinton, joined by Judges Onion and McCormick, asserted that permitting appellate court to reverse conviction as being against great weight and preponderance of evidence would not violate due process or double jeopardy).

preme Court's opinions which interpreted Art. V, § 6, in that manner.

... considering that the constitutional amendment did not in any manner affect that portion of Art. V, § 6, which grants the authority to conduct a factual review of the evidence, it is apparent that the Court's observations and conclusions cannot and should not be altered and thus constitute *stare decisis.* [785 S.W.2d at 155.]

*Meraz* involved the role of courts of appeals in reviewing the factual sufficiency of the evidence relative to proof of an affirmative defense. Thus the court—quite properly—limited its holding and expressed no opinion about the role of courts of appeals in reviewing the sufficiency of the evidence relative to the proof of the elements of an offense. *Id.* at 156.

Because *Meraz* was specifically limited to appellate reviews of affirmative defenses, the debate was not resolved. However, any question appears to have been answered by a sweeping decision of the Texas Court of Criminal Appeals. *Bigby v. State,* No. 71,234 (Tex.Crim.App. Nov. 2, 1994). Like *Meraz, Bigby* deals with a challenge to the factual sufficiency to support a finding on an affirmative defense. However, nothing in the *Bigby* decision indicates any intent to again limit its holding, that appellate courts can review factual sufficiency challenges, to appellate reviews of affirmative defenses. On this question, *Bigby* held that in capital murder direct appeals it has the ability to factually review a criminal cause. *Bigby,* slip op. at 9. It also made clear that the courts of appeals are final on factual questions generally. The court wrote the following:

> That is, a court of appeals' determination of "factual insufficiency" or "against the great weight and preponderance of the evidence" points of error is final in criminal cases, absent an error by that court on applicable law.

*Id.* slip op. at 5 n. 3.[3] There is clearly only one logical conclusion to be reached consistent with what was said in *Meraz* and *Bigby:* Article V, § 6 grants courts of appeals authority to conduct a review of the factual sufficiency of the evidence in *all* cases.[4]

We now proceed to determine whether the evidence is legally and factually sufficient to support the conviction.

## THE MARIHUANA COUNT

The evidentiary attack against White's conviction of possessing marihuana is, as conceded by his attorney on appeal, "weak." White was shown to be an owner of the

---

**3.** To place the court's expression in context; we quote from footnote three:

In civil cases, a court's of appeals *factual* finding is final and is not subject to review by the Supreme Court. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 648 (Tex.1988); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633 (Tex.1986); *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Choate v. San Antonio & A. P. Ry.,* 91 Tex. 406, 44 S.W. 69 (1898). In a civil case, the courts of appeals have the power to review "factual insufficiency of the evidence" or "against the great weight and preponderance of the evidence" points of error. *Cropper,* 754 S.W.2d at 651. The courts of appeals determination on these points is final as to the facts. *Cropper,* 754 S.W.2d at 648. However, both the courts of appeals and the Texas Supreme Court have the power to review "no evidence" points because such a question is a question of *law* and not of *fact. Choate,* 44 S.W. at 69.

Our jurisdiction in discretionary cases would appear identical to the Texas Supreme Court's writ of error jurisdiction. It logically follows that, absent an opposite reading of the Texas Constitution, our Court is also bound by factual determinations by the courts of appeals. Tex. Const. art. V, § 6. That is, a court of appeals determination of "factual insufficiency" or "against the great weight and preponderance of the evidence" points of error is final in criminal cases, absent an error by that court on the applicable law. *Meraz,* 785 S.W.2d at 154.

*Bigby v. State,* No. 71,234, slip op. at 5 n. 3 (Tex.Crim.App. Nov. 2, 1994).

**4.** Any other conclusion is not only illogical but also creates two differing views of a single constitutional provision, which is a ridiculous and undesirable result. *See* Citizens' Commission on the Texas Judicial System, Report and Recommendations: Into the Twenty-First Century 11, 12 (1993) (calling "unfortunate" three instances when the two high courts of this state have differed on the meaning of specific statutes or constitutional provisions).

house at 306 Walnut in which marihuana was found.

When a defendant is charged with possession of a controlled substance, the State must prove that he exercised care, control, or management over the substance and that he knew the object he possessed was contraband. *Marable v. State,* 802 S.W.2d 3, 5 (Tex.App.–Texarkana 1990, pet. ref'd). Affirmative links between an accused and the drugs he is alleged to have possessed may be proved by circumstantial evidence. *Waldon v. State,* 579 S.W.2d 499, 501–02 (Tex.Crim.App. [Panel Op.] 1979).

These affirmative links include the following: whether the accused owned, rented, or controlled the place where police found the contraband, whether the accused had convenient access to the contraband, and whether the police found contraband in plain view or in areas private to the accused. *Edwards v. State,* 813 S.W.2d 572, 575 (Tex.App.–Dallas 1991, pet. ref'd). Also included is whether the accused was in close physical proximity to the contraband. *Stokes v. State,* 853 S.W.2d 227, 239–40 (Tex.App.–Tyler 1993, no pet.).

Affirmative links in this case include the fact that White resided at the house with his wife. When police searched the house, marihuana was found in large quantities in various locations. The marihuana was found in compressed, ready-to-sell condition, in leafy, bulk condition, in seed form, and a Cuisinart Mini–Mate chopper/grinder was found with marihuana residue in it. A police scanner, presumably to listen to law officers' conversations, was also there. The officers also found $3,700.00 cash. A search of the house about ten days earlier, when White was also present, revealed various amounts of marihuana.

The presence of marihuana was open and obvious, and White had easy, convenient access to it. Based on the evidence, we conclude that the evidence is legally and factually sufficient to support the jury's finding that

White possessed the marihuana as alleged in that count of the indictment.

## THE COCAINE COUNT[5]

### Legal Sufficiency

As to White's conviction for possession of cocaine with intent to deliver, White contends there is no proof linking him to the tackle box, boat, or lot where the cocaine was found. However, the record indicates that White was arrested in the field where the cocaine was located. This field was located next to his home. Police were informed by a previously reliable confidential informant that White was in possession of cocaine forty-eight hours before the search warrant was executed. Also seized in the search of the home were the previously mentioned marihuana and related evidence.

The cocaine was not found in the search of the residence but was found in the vacant lot next door; White did not physically possess the cocaine. We therefore must look to affirmative links between the accused and the contraband; these links may be proved by circumstantial evidence. *Waldon,* 579 S.W.2d at 502. Possession and control of drugs need not be exclusive, it may be shared with one or more persons. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App. 1986).

Ironically, many of the reasons urged by the State in maintaining that the cocaine was not unlawfully seized weigh in favor of the view that White was not in possession or control of the cocaine. He did not own the property on which the cocaine was found. No one was shown to have owned the boat or tackle box in which the cocaine was found. Those items were in a vacant lot. However, as indicated earlier, White and several other persons were standing on the vacant lot at 310 Walnut, about sixteen feet from the boat. A large amount of cash was found in the house which, along

---

5. White's attorney also claims that the trial court improperly accepted the jury's verdict of guilt of possession of cocaine with intent to deliver because the jury, contrary to the court's instructions, found White guilty of both of the two alternative cocaine counts. Our disposition of this case makes this contention moot, and upon a retrial the form of verdict will undoubtedly submit the two offenses conditionally.

with the drug paraphernalia and police scanner also found, is consistent with drug dealing and might tend to show knowledge on White's part. Further, testimony indicated that it was a drug-dealer practice to secrete a "stash" of drugs near but not at the place they resided. The jury may have inferred from the circumstances that White and the others shared possession and control of the cocaine. Applying the *Jackson* standard of review to the claim that the evidence is legally insufficient, and after viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Factual Sufficiency*

 As we have indicated, in reviewing factual sufficiency of the evidence questions we are mindful that the jury determines the credibility of the witnesses and the weight to be given their testimony. *Penagraph,* 623 S.W.2d at 343. This case is not, however, one in which the jury was called upon to assess credibility or weigh testimony. The credibility of the State's witnesses was not challenged, and conflicting testimony was not presented to the jury. Thus, there is little likelihood that our evaluation of the factual sufficiency of the evidence might offend the *Penagraph* admonitions.

The facts have already been discussed and, in concluding that the evidence was legally sufficient, we did so primarily based upon permissible jury inferences and the *Jackson* standard of review, which requires us to view the evidence in the light most favorable to the prosecution. In conducting our review for factual sufficiency, we consider all the evidence and determine whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz,* 785 S.W.2d at 155.

 The State did not sufficiently show that White either owned or was linked to the vacant lot, the boat, the tackle box, or the cocaine found in the tackle box. The only evidence which connects him at all is that when the officers arrived to execute the search warrant, he and several other people were in the lot. When the accused is not in exclusive control of the place where contraband is found, it cannot be concluded that he had knowledge and control of it unless there are independent facts and circumstances which link him to the contraband. *Foster v. State,* 635 S.W.2d 710, 719 (Tex.Crim.App. [Panel Op.] 1982) (opinion on reh'g). Thus, we must assay the incriminating circumstantial evidence produced at trial. *Id.* Here, however, there is no other incriminating evidence. Viewing all the evidence, we conclude that the jury's finding that White had care, custody, and control of the cocaine found in the vacant lot is so against the great weight and preponderance of the evidence as to be manifestly unjust.

 Because we conclude that the evidence is factually insufficient to support the guilty finding on the cocaine count, we reverse the cause and remand it for a new trial.[6]

---

**6.** White also lodged a complaint that the trial court erred in admitting evidence of an extraneous offense. Evidence was admitted showing that, during a search of the house about ten days earlier, White was on the premises, and marihuana was found in the house. This was admitted as tending to show that White had knowledge of the presence of the marihuana he was charged with possessing. The determination of admissibility is within the discretion of the trial court. *Jackson v. State,* 575 S.W.2d 567, 579 (Tex.Crim.App. [Panel Op.] 1979). That determination will not be reversed on appeal unless a clear abuse of discretion is shown. *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim.App.1986).

Texas Rule of Criminal Evidence 402 provides that all relevant evidence is admissible. Evidence which is not relevant is inadmissible. TEX. R.CRIM.EVID. 402. Rule 401 defines relevant evidence as that having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401.

Rule 403 indicates that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.CRIM.EVID. 403. While evidence of other crimes is generally inadmissible, it may be admitted to prove knowledge, plan, or intent. TEX. R.CRIM.EVID. 404(b).

White has not shown an abuse of discretion, and we presume that upon retrial the trial court will first determine that any offered evidence is relevant, then, upon request, conduct a balancing

We reverse the judgment of conviction of cocaine and remand that cause for a new trial; otherwise we affirm the trial court's judgment.

GRANT, Justice, dissenting.

I respectfully dissent from the portion of this decision sending the cocaine count back for a new trial. White's presence on a vacant lot with a number of other people is not evidence that links him to the contraband. There was no showing that White owned, rented, or controlled the place where the drugs were found on the lot; although he owned the house next door, there was a fence between it and the vacant lot; there were a number of other people on the lot at the time the police arrived; they were as close to the boat as White was; there was no showing that he was in any way jointly connected to any activities of these people as a group; the drugs were not in plain view, but were in a closed tackle box, thus there was no showing that he was aware that the drugs were there.

Without an affirmative link between White and the drugs, his presence on the lot with others is no evidence of possession of the drugs, and I would order an acquittal on the cocaine count.

analysis pursuant to Rule 403 before admitting the evidence.