NO. 07-05-0136-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 28, 2006

______________________________

ROBERT HOLLEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 364
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400231; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

Following a plea of not guilty, appellant Robert Holleman was convicted by a jury of possession of cocaine in a drug-free zone with intent to deliver and sentenced to life imprisonment.
(footnote: 1)  Appellant was convicted after being linked to baggies of crack cocaine found during the execution of a search warrant at a Lubbock residence.  By a single issue, appellant contends the evidence was factually insufficient to support the jury’s finding that he possessed the cocaine.  We affirm.

On June 27, 2002, members of the South Plains Regional Narcotics Task Force, in conjunction with the Lubbock SWAT team, conducted a raid on a Lubbock residence believed to be associated with the trafficking of narcotics.   Officer Scott Weems, a member of the Lubbock SWAT team, testified that he observed several people standing in front of the residence when he arrived at the scene.   While waiting to exit the SWAT team van, he observed one of the persons, described as a black male wearing a white tank top and black jean shorts with a large shiny buckle, toss several small objects out of his right hand.  However, because he had other responsibilities during the initial moments of the raid, he was unable to investigate immediately.  Once inside the residence, he informed a narcotics officer of what he had seen but the officer was unable to locate the objects.

After the residence was secured, Officer Weems returned to the area where he observed the person throw the objects and found two plastic baggies containing an off-white substance near a fence on the east side of the residence.  The substance in the baggies was later determined to be ten grams of crack cocaine.  After locating the objects, Officer Weems identified appellant, who had been detained, as the person who had tossed the baggies.  A pat-down search of appellant yielded $2,724 in cash and marihuana in his shorts pocket.  As a result of the raid, twelve people were detained and two were arrested, including appellant, who was charged with possession of the cocaine.  

At appellant’s trial, in addition to Weems’ testimony, the State introduced a video of the raid taken by members of the SWAT team.  Although the video did not capture appellant tossing the baggies, it showed the baggies in the location where Weems said he found them and recorded appellant as he identified himself while sitting handcuffed in the driveway.  The video also recorded the individuals detained during the raid as each recited his name, birth date and address.  Appellant stipulated that the substance in the baggies was cocaine and that the offense was committed in a drug-free zone within 1,000 feet of a school, but presented the testimony of a private investigator who concluded that, based on his measurements, it was “possible, but not probable” that appellant could have tossed the baggies to their location from where he was seen standing in the driveway.  In addition, appellant’s friend identified appellant’s belt which she picked up from the Lubbock County jail and which did not have a large buckle.  At the conclusion of the evidence, the jury found appellant guilty of the offense.

By his sole issue, appellant challenges the factual sufficiency of the evidence linking him to the cocaine found near the residence.  When an appellant challenges the factual sufficiency of the evidence, we review all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  
Johnson v. State
, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000).  We must determine, after considering all the evidence in a neutral light, whether the jury was rationally justified in finding guilt beyond a reasonable doubt.  
Zuniga v. State
, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), 
overruled in part by
 Watson v. State, No. PD-469-05, 2006 WL 2956272, at *10 (Tex.Crim.App. Oct. 18, 2006).  We cannot reverse a conviction and order a new trial unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury’s verdict.  
Watson
, 2006 WL 2956272, at *10.  We cannot conclude that appellant’s conviction is “clearly wrong” or “manifestly unjust” simply because, based on the evidence presented, we disagree with the jury’s verdict.  
Id.
; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).  Any opinion addressing factual sufficiency also must include a discussion of the most important and relevant evidence that appellant claims undermines the jury’s verdict.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To prove unlawful possession of a controlled substance, the State must prove that appellant (1) exercised actual care, custody, control, or management over the substance and (2) knew the substance he possessed was contraband.  Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2006); 
Poindexter v. State
, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005).  The evidence must establish appellant’s connection with the controlled substance was more than just fortuitous.  
Brown v. State
, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).  

When the accused is not in exclusive possession of the place where contraband is found, additional independent facts and circumstances must affirmatively link him to the contraband.  
Deshong v. State
, 625 S.W.2d 327, 329 (Tex.Crim.App. 1981).  This “affirmative links rule”
(footnote: 2) is a common sense notion designed to protect innocent bystanders, a parent, child, spouse, roommate, or an acquaintance from conviction based solely upon their “fortuitous proximity to someone else's drugs.”  
Poindexter
, 153 S.W.3d at 406.

Links may include, but are not limited to: (1) appellant's presence when the contraband was found; (2) whether the contraband was in plain view; (3) appellant's proximity to and the accessibility of the contraband; (4) whether appellant was under the influence of contraband when arrested; (5) whether appellant possessed other contraband or drug paraphernalia when arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of contraband; (10) whether appellant owned or had the right to possess the place where the contraband was found; (11) the amount of contraband found; or (12) whether appellant possessed a large amount of cash.  
Taylor v. State,
 106 S.W.3d 827, 832 (Tex.App.–Dallas 2003, no pet.).  It is the logical force of these factors, individually or combined, which determines whether the State's evidence links appellant to the contraband. 
Id.
; 
Wallace v. State
, 932 S.W.2d 519, 524 (Tex.App.–Tyler 1995, pet. ref’d).
(footnote: 3) 

As noted, Officer Weems testified he saw a black male, wearing a white tank top and black jean shorts with a large shiny buckle,
(footnote: 4) toss several shiny objects the size of a ping-pong ball from the grassy area on the east side of the driveway.  He later found baggies of cocaine lying on the ground in the same area where he saw the man toss the objects. Weems’ testimony, and the video, show he identified appellant, who sat handcuffed where he was found in the driveway, as the person he saw.  Appellant was the only person at the residence whose clothing matched Weems’ description, and he was arrested in the driveway close to where Weems said he saw a man toss the objects.  When arrested, appellant had a large amount of cash in small bills on his person and a small baggie of marihuana in his pocket.

By his brief, appellant maintains that there are several reasons the evidence was insufficient to show he possessed the cocaine.  First, he contends it is unlikely he could have tossed the baggies of cocaine from where Weems said he was standing and be arrested on the opposite side of the driveway, because of the short amount of time it took officers to get to his location after they initiated the raid.  Weems acknowledged, and the video reflects, that events at the beginning of the raid happened in seconds.  Appellant claims the testimony of private investigator Jerry Randall discredits the jury’s verdict.  Randall, a retired Department of Public Safety officer, testified that he conducted experiments by tossing rolled-up dollar bills and noting the distance that he could toss them.
(footnote: 5)  However, on cross-examination, Randall conceded that the physical properties of the item thrown would affect its flight, that he did not experiment with objects shaped like the baggies of crack cocaine, and that the eventual location of the cocaine would depend on where the thrower actually was standing.  Next, appellant points out that the video does not show him tossing the objects, that there were numerous persons at the residence, and that the only person visible on the video near the area where Officer Weems said he threw the objects was a man later identified as Rashard Johnson.  However, the video evidence undermines appellant’s claim that the time frame was too short for him to throw the objects and be arrested on the other side of the driveway.  Evidence showed that Johnson was apprehended across the yard near the west side of the residence.  If the time frame permitted Johnson to reach the location at which he was arrested, the jury reasonably could have concluded appellant also could have reached the other side of the driveway after tossing the contraband.  

Appellant also points us to the discrepancy regarding the belt buckle observed by Officer Weems and a belt and buckle admitted into evidence.  Officer Weems testified that he was able to identify appellant in part by his large shiny belt buckle.  Appellant’s friend testified she picked up appellant’s possessions from the jail property room at his request.  She produced a belt without a large buckle and identified it as the belt she picked up among appellant’s possessions.  However, on cross-examination, the State established that the witness had the belt in her possession for some time and brought it to court only after hearing the evidence against appellant at trial.  The jury was not required to accept the suggestion that it was the same belt, or had the same buckle, as that worn by appellant when he was arrested.
(footnote: 6)        

Finally, appellant contends the facts in this case are similar to the facts in
 White v. State
, 890 S.W.2d 131 (Tex.App–Texarkana 1994, pet. ref’d).  In 
White
, the defendant was convicted of possession with intent to deliver after officers found cocaine in a boat parked in a vacant lot adjacent to the defendant’s residence.  
Id.
 at 134.  The Texarkana court found the evidence to be factually insufficient to convict because the only evidence connecting him to the contraband was the fact that “he and several other people were in the lot.”  
Id.
 at 139.  Appellant contends that, as in 
White
, the “countervailing evidence” in the present case undermines the jury’s verdict.  We disagree.

Here the evidence consists of more than just appellant’s presence on the premises where the drugs were found.  Officer Weems’ testimony identifying appellant as the person he saw throw the drugs, augmented by appellant’s close proximity to the area where the drugs were found, support the jury’s verdict.  The contraband and large amount of cash found on appellant’s person also provide evidence supporting appellant’s guilt.  
Taylor
, 106 S.W.3d at 832.  In this regard, the jury, as trier of fact, may choose to believe all, some, or none of any witness's testimony. 
Sharp v. State
, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986).  A jury's decision is not manifestly unjust merely because it resolved conflicting views of evidence in favor of the State.  
Cain v. State
, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).  

After reviewing the entire record, we find the evidence indicating appellant possessed cocaine with intent to deliver to be sufficient.  Viewing the evidence in a neutral light, we hold the jury was rationally justified in finding guilt beyond a reasonable doubt.  Appellant’s issue is overruled.

Accordingly, the trial court's judgment is affirmed.

James T. Campbell

        Justice

Do not publish.  yen’s house.  Once there, she told Jorge that he could take whatever he wanted because the friend owed her money.  The pair took several items from the house, including eight rifles, and then went to an ATM machine where she “pulsed” $300 using Nguyen’s Visa debit card.   She used the same card again on three other occasions obtaining $300 each time, which she used to purchase various items, including a riding lawnmower which was later recovered at her home.  On August 13, 2001, she asked Jorge to accompany her once more to Nguyen’s home to help her move a television set.  However, upon their arrival, the doors were locked and she remembered she had left her keys inside the house on her earlier trip. She later called Nguyen’s employer and was told he was missing.  She then called the sheriff’s office, which resulted in her conversation with Ferrell.

Appellant’s Sixth Statement

On August 24, 2001, appellant again asked to speak with Detective Bucks. He was not available so she spoke with Detective Mace, who took another written statement from her.  In this statement, she explained where she had disposed of the shell casing from the pistol, the wrench, and a laptop computer she had purchased with some of the money taken from Nguyen’s ATM account.  She also gave additional information about her activities since the incident.  She ended this statement by exonerating her husband by saying, “My husband had no idea what I had done, and was innocent of all the things that happened  . . . .”

As additional evidence supporting the jury verdict, the State points to testimony from appellant’s sister that appellant phoned her from jail and admitted to her “that she killed a person because he was going to take her baby and leave and go to Vietnam.”  It also refers to testimony by a reporter stating that appellant had admitted to him that she shot Nguyen, took his body to a stump hole, then returned to her house and cleaned up.  However, she made no reference to the use of a wrench.  The State further refers to the evidence that DNA tests of the blood splatter material taken from the hallway of appellant’s home matched the DNA of skin cells taken from an electric razor obtained from Nguyen’s house.  Additionally, it emphasizes a written statement by appellant’s husband in which he says that appellant told him that on August 3, 2001, “she had removed a problem, a man who had threatened her and our kids.”  

In the statement, appellant’s husband also said that he had helped burn things on the pile started by his wife, and that on August 13, 2001, he bagged “smelly mud” from the burn pile and disposed of it in an apartment complex dumpster in Humble.  He said that on August 9, 2001, appellant asked him to discard a pipe wrench that “[s]he said had blood on it and she had cleaned it off, but she wanted it gone.”  He described the place where he had thrown it.  The police located a wrench where he said he had discarded it and DNA tests of blood taken from the wrench matched that of Nguyen. There was  police testimony that the “medium velocity” blood splatter found in appellant’s hallway was in a manner that generally indicated a beating. 

There was further testimony that eight bone fragments found in the burn pile in question were identified as human bones, as well as testimony by Nguyen’s sister that an unusual ring found in the burn pile belonged to Nguyen.  Family photos received into evidence showed Nguyen wearing a similar ring on his middle finger.

Reiterated, in her first issue, appellant contends that we should reverse the trial court and dismiss the indictment against her because the evidence is insufficient to support the conviction or, in the alternative, we should reverse and remand for a new trial.  We will consider this contention as raising both legal and factual insufficiency issues. In assessing the legal sufficiency of evidence to support a conviction, as articulated in 
Sanders v. State
, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003), we must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The court also instructs that this standard is meant to give full play to the jury’s responsibility to “draw reasonable inferences from basic facts to ultimate facts.”  
Id
. at 820; 
see 
also 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S.Ct 2781, 2789, 61 L.Ed.2d 560 (1979).

In supporting her legal insufficiency  argument, appellant points out that the evidence presented by the State was predominantly circumstantial in that no body was ever discovered and no witness to the murder testified at trial.  She recognizes that the State presented her extrajudicial statements, but argues that the statements were inconsistent and  changed over a period of time, with the changes being correlated with information given her by law enforcement personnel and her husband.  Considering that, appellant argues that the other evidence is not sufficient to prove the 
corpus delicti
 of the underlying crime of murder.

The 
corpus delicti 
rule is one of evidentiary sufficiency that provides that an extrajudicial confession of wrongdoing, standing alone, is not enough to support a conviction and there must be other evidence demonstrating that a crime has in fact been committed.  That other evidence is commonly referred to as the “corpus delicti.”  The rule does not require independent corroboration of each element of the underlying crime but rather that there be some independent evidence tending to show the essential nature of the charged crime.  The other evidence need not be sufficient by itself to prove the offense, but must be sufficient to render the commission of the offense more probable than it would be without the evidence.  
Salazar v. State
, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002);
 Rocha v. State,
 16 S.W 3d 1, 4 (Tex. Crim. App. 2000).  The historical justification of the rule in a murder case such as this one is to guard against the deleterious effect upon the criminal justice system if a murder victim suddenly reappeared after his self-confessed murderer had been tried and executed.  
Salazar v. State,
 86 S.W.3d at 644.

The evidence showed that on August 9, 2001, Nguyen failed to show up for work for the first time in his 19 years employment at the pharmacy at the Northwest Medical Hospital and has never again been seen by his manager or family.  In her fifth statement, appellant said she had killed Nguyen by hitting him with a wrench, rolled his body in a carpet and dragged him to a hole in her backyard which was set afire.  She also said that things in the hole were set afire on three different occasions.  She further admitted that the remains were later bagged and taken to a dumpster in the parking lot of an apartment complex.  There was evidence that the blood splatter found in the hallway of appellant’s house was of the type generally associated with a beating, and DNA tests showed that the blood in the splatter, as well as the blood on a ten-pound wrench, matched the DNA taken from skin cells found in Nguyen’s razor.  Additionally, human bones and an unusual ring identified by Nguyen’s sister as his and which was shown in a photo were also found in the burn pile.  Suffice it to say that the evidence other than the extrajudicial confessions is amply sufficient to satisfy the requirement of the 
corpus delicti
 rule.  Moreover, in her extrajudicial confessions, while changing somewhat in the details of the crime and her reason for committing it, appellant was consistent in admitting that she actually killed Nguyen.  Those confessions were sufficient to establish her identity as the perpetrator of the crime.  
Emery v. State
, 881 S.W.2d 702, 706 (Tex. Crim. App. 1994).  Viewed in the light by which we must view it, the evidence in this record is both legally and factually sufficient to sustain the jury’s guilty verdict.  Appellant’s first issue does not reveal reversible error and is overruled.

As noted above, in her second issue, appellant contends her constitutional due process rights were violated because the State failed to thoroughly investigate the case, including the possibility that someone else might have committed the crime.  This contention is intertwined with the argument that appellant’s first trial counsel provided her ineffective assistance.  With regard to the asserted “due process” failure of the State to adequately investigate the case, we note that the record does not show this contention was ever presented to the trial court by a motion for mistrial, objection to the testimony of any officers, motion for new trial, or otherwise.  Accordingly, the issue has not been preserved for appellate review.  Tex. R. App. P. 33.1; 
Johnson v. State, 
963 S.W.2d 140, 142 (Tex. App.–Texarkana 1998, pet. ref’d). 

  We recognize that there are a few constitutional rights so integral to the operation of the system that inaction will not result in waiver.  
See Hawkins v. State
, 964 S.W.2d 767, 769-70 (Tex. App.–Beaumont 1998, pet. ref’d).
  However, under this record, the State’s investigative procedure is not shown to fall within that type of exception.  The record shows that appellant confessed to all the elements and evidentiary facts of the murder charge.  She stated six times unequivocally that she alone murdered Nguyen by either shooting him or by hitting him with a wrench three times and then shooting him.  When a defendant unequivocally admits or confesses to a crime, those admissions or confessions are direct, not circumstantial evidence of a crime.  
Ridyolph v. State
, 545 S.W.2d 784, 789 (Tex. Crim. App. 1977).  

Additionally, the confessions were corroborated by the evidence about DNA profiles of the blood stains and blood splatters we mentioned in our evidentiary recap, and there was evidence that human bones were found in the burn pile identified by appellant, along with an unusual ring owned by Nguyen.  The confession statements about appellant’s relationship with Nguyen were corroborated by a Nguyen family picture received into evidence showing appellant and her child with the group, as well as a photo album found at Nguyen’s home, labeled “Rebecca” Stanford Nguyen (appellant’s daughter), containing pictures of appellant and her daughter.  There was also the evidence of ATM pictures showing appellant using Nguyen’s ATM card, and that Nguyen’s car insurance covered appellant as a driver of the car Nguyen assertedly bought for her.  If, indeed, the State’s investigative procedure violated appellant’s right to due process and a fundamentally fair trial, her remedy is through a post- conviction writ of habeas corpus.  
See Ex parte Mowbray, 
943 S.W.2d 461 (Tex. Crim. App.1996);
 
Ex parte Brandley,
 781 S.W.2d 886 (Tex. Crim. App. 1989).

With her claims of insufficient investigation by the State, appellant also intertwines a claim of ineffective assistance of counsel.  In buttressing that claim, she relies upon the proposition that to render effective assistance in a criminal case, counsel must conduct an independent investigation to determine if law enforcement personnel pursued all information that could shed light on the charged offense, or whether they only pursued information consistent with a preconceived determination of the guilt of the accused.  
See, e.g., Ex parte Brandley
, 781 S.W.2d
 at 890-94.     

Specifically, she asserts that her first defense counsel failed to:

1.  Inspect the State’s physical evidence.

2.  File sufficient pretrial motions.

3.  Be present at a pretrial hearing held on December 14, 2001, although he was present for the arraignment hearing on December 17, 2001.

4.  Inspect appellant’s mobile home before it was moved from the property, or “preserve it in its August 15, 2001, state for defense examination.”

5.  Identify and locate defense witnesses, including Harris County Sheriff’s Sergeant S.D. Ruggiero and Israel Reyes, in time for them to testify at trial.

6.  Retain any expert witnesses.

The standards by which we evaluate ineffective assistance of counsel are articulated in the seminal case of 
Strickland v. Washington, 
466 U.S, 668, 689
, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In 
Hernandez v. State,
 988 S.W.2d 770, 772-74 (Tex. Crim. App. 1999), the court provided that the 
Strickland
 standards are applicable in Texas to determine claims of ineffective assistance of counsel.  The 
Strickland 
court explained that the purpose of the Sixth Amendment guarantee of effective assistance of counsel was “simply to ensure that criminal defendants receive a fair trial.”  
Strickland
, 466 U.S. at 689, 104 S.Ct. at 2065. 

To determine if counsel’s performance met that standard, the 
Strickland
 court promulgated a two-prong test usually stated as: 1) whether her counsel’s conduct was deficient; and 2) whether but for counsel’s deficient performance, the result of the proceeding would have been different.  
See Hernandez,
 988 S.W.2d at 770 n.3.  The high court also articulated that an error by counsel, even if professionally unreasonable, would not warrant setting aside a judgment in a criminal proceeding if the error had no effect on the judgment and, to demonstrate the requisite prejudice, an appellant must show that there is a reasonable probability that, but for the errors, the result of the proceeding would be different.  The court defined a “reasonable probability” as one sufficient to undermine confidence in the outcome.  
Strickland v. Washington
, 466 U.S. at 691, 104 S.Ct. 2068.  In 
Boyd v. State, 
811 S.W.2d 105, 109 (Tex. Crim. App. 1991), the court cautioned that absent both showings, a reviewing court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable.

The record before us simply does not justify a conclusion that, but for any of the alleged errors on the part of appellant’s first counsel, the result of her trial would have been different.  This is particularly true in view of the fact that appellant signed six confessions that she murdered Nguyen by herself, the evidence corroborating those confessions, and her exoneration of her husband in any participation in the murder.  We also note that the record shows that her trial counsel had five weeks to prepare for trial and mounted a vigorous defense in the course of which he presented some 15 witnesses.  Issue number two is overruled.

In her third issue, as we noted above, appellant posited that we should reverse and remand this case for a new trial because of the trial court’s refusal to grant her a two- week continuance and instead granted a one-week continuance.  She was harmed, she argues, because the refusal to grant the full continuance denied her additional time to locate witnesses and “otherwise prepare for trial” and “resulted in deliberations beginning on the Friday preceding a holiday weekend . . . .”

As appellant recognizes, the determination whether to grant a motion for continuance is within the court’s discretion.  
Corley v. State
, 582 S.W.2d 815, 820 (Tex. Crim. App. 1979)
.  She also recognizes that she has found no authority that deliberations beginning on the day before a holiday would lose rationality as a result.  Moreover, the record does not show that this particular argument was ever presented to the trial court.  As we have noted above, Rule 33.1(a) of the Rules of Appellate Procedure requires that to preserve a matter for appellate review, a timely request, objection, or motion must be made that states “the grounds for the ruling that the complaining party sought from the court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context” and that the trial court ruled or refused to rule on the matter.  That being true, that question is not before this court for decision.

We are then relegated to determining whether by making only a partial grant of the motion, the trial court abused its discretion.  The record reveals that the trial court heard a motion to substitute trial counsel on April 12, 2002.  At that time, the court granted the motion with the admonition: “We’re set for trial in May.  We’re not going to be postponing the trial because of new counsel, so either work it out or go to trial.”  Regardless of the judge’s comment, appellant filed a motion for continuance on May 9, 2002, in which it was asserted that co-counsel had a conflict with the May 13, 2002  trial date and she needed the presence of co-counsel at the trial and, further, there was not adequate time for her experts to examine “[e]vidence that should be in the possession of the prosecutor [that] is not in the prosecutor’s file.” She requested a two-week continuance for those purposes.  Upon a discussion with counsel about what needed to be done, the trial court granted a one-week continuance.

On May 16, 2002, the trial court held a hearing on appellant’s motion to suppress.   The court concluded the hearing with the comment: “See y’all Monday, [the trial date previously set] at right around 1:00 o’clock. Okay?”  Further, at the beginning of voir dire on the trial date, appellant again did not raise her concerns.  After examining the entire record in this case, we cannot say that the trial court abused its discretion in refusing to grant the full continuance requested.  Appellant’s third issue is overruled.

In her fourth issue, appellant contends the trial court reversibly erred in refusing her requested jury instruction regarding the use of a specific deadly weapon rather than a single instruction stating alternate deadly weapons.  In the instruction given, the jury was told it could find that appellant  “intentionally or knowingly cause[d] the death . . . by shooting him with a firearm or by striking him with a wrench . . . .”  The same instruction permitted appellant’s conviction if the jury found that appellant “with intent to cause serious bodily injury . . . committ[ed] an act clearly dangerous to human life, by shooting him with a firearm or by striking him with a wrench that caused the death . . . .”

In support of this argument, appellant points to what she describes as the inconsistent statements in her various confessions concerning the manner of the victim’s death.  She notes the statements in some confessions indicating that he was shot with a firearm with those stating that the victim was struck with a 24-inch long, ten-pound pipe wrench.  Her requested instruction would expand the instruction to contain four alternatives rather than two.  She reasons that if her requested instruction had been given, it would have “called the jury’s attention to the conflicting evidence regarding how the victim died.”  Noting that the jury had evidence of the strength of appellant’s husband, she reasons that the jury could see appellant at the defense table and form an opinion as to her strength.  Thus, she continues, the jury “focused on that strength comparison and the conflicting evidence presented, would have to consider whether the 5-foot, 5-inch tall, 110 pound female could have swung the 24-inch long, 10-pound pipe wrench at a speed of 5 to 25 feet per second, in a hallway, under a 7-foot, 5-inch high ceiling.”

Appellant’s only trial objection was “I object to the compound nature of the charge on the two alternates found in the indictment” without amplification as to the basis of that objection.  We have stated above her appellate contention.  We agree with the State that appellant’s suggested submission for the purpose she suggests would effectively violate  that portion of Texas Code of Criminal Procedure article 36.14 which provides that a judge should deliver a charge “not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.”  Tex. Code  Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004-05).  Appellant’s fourth issue is overruled.

In sum, all of appellant’s issues are overruled, and the judgment of the trial court is affirmed. 

John T. Boyd

Senior Justice

Do not publish.

FOOTNOTES
1: Appellant pled true to three enhancement paragraphs alleging prior felony convictions for possession of controlled substances.

2: By its recent opinion in 
Evans v. State
, No. PD-1911-05, 2006 WL 2686552, at *2  (Tex.Crim.App. Sept. 20, 2006), the Court of Criminal Appeals has discontinued its use of the term “affirmative links,” stating that in the future it will refer to the indicia simply as “links.” 

3: Although appellant’s argument analyzes the evidence through a “links” analysis, this is not a typical case for such an analysis.  Appellant’s primary argument is not that his proximity to the baggies of cocaine was fortuitous.  His primary contention is that factually insufficient evidence establishes he was the person Weems saw throw the baggies. Appellant’s brief makes the contention clear, beginning with the statement, “This is a case of misidentification.”  By Weems’ testimony, the cocaine was in appellant’s exclusive possession, being in his hand at the time he threw it.  
Cf
. 
Deshong
, 625 S.W.2d at 329 (links analysis necessary when defendant not in exclusive possession of place contraband found).

4: He later said the man he saw toss the objects “was wearing a white muscle shirt, black jean shorts, and he had a large shiny buckle on his belt.”

5: Randall said he used the currency for his experiment because a dollar bill weighs one gram.  He combined five bills for his experiment, and said he was able to throw that five-gram object about 30 to 35 feet.  Randall also testified he measured distances between some positions in the front yard of the residence.  Although his testimony is not clear on this point, it indicates Randall’s opinion was that one of the baggies would have traveled more than 40 feet if appellant had thrown it from where Weems said he saw him.    

6: Appellant’s belt buckle is not visible on the video.