Opinion issued October 27, 2005




     







In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00524-CR




LORETTA MARIE MAXIE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 975461




MEMORANDUM OPINION

          Appellant, Loretta Marie Maxie, pleaded not guilty to the felony offense of
aggravated sexual assault of a child. See Tex. Pen. Code Ann. §§ 22.021(a)(1)(B)(i),
22.021(a)(2)(B) (Vernon Supp. 2004–2005). A jury found her guilty and sentenced
her to 25 years in prison. In three points of error, appellant contends that the
evidence is legally and factually insufficient to establish her guilt and that she
received ineffective assistance of counsel. We affirm.
Background
          A.C. lived with her father, Anthony Carr, who had full legal custody of A.C.
beginning in August, 2003, although he previously had joint custody with appellant,
A.C.’s biological mother. On the morning of January 13, 2004, eleven-year old A.C.
went to school. When Carr came home from work that day, A.C. was not at home,
and Carr became worried. He went to A.C.’s school and questioned teachers and
students, but nobody could say whether A.C. had got on the bus. He drove around
the neighborhood looking for A.C. and returned to the school when he could not find
her. He talked to her teacher and her principal, who called some of A.C.’s friends,
but no one had seen her. After driving around the neighborhood again, Carr went
home and called the Harris County Sheriff’s Office (HCSO).
          When HCSO deputies responded to Carr’s call, Carr was instructed to call
A.C.’s mother. Carr called appellant, told her that A.C. was missing, and told her that
the deputy wanted to speak to her. Although appellant did not want to speak with the
deputy, Carr gave the phone to the deputy. After the phone call, several deputies
searched for A.C. One deputy stayed at Carr’s house; one went to the school; one
drove around the neighborhood; one went to Carr’s mother’s house; and one went to
appellant’s house. A.C. was not located during the search that occurred that night.
          The next morning, A.C. was found at a fire station. When Carr saw A.C. that
morning, he observed that her clothes had been torn and her hair was a mess. Deputy
McNabb, a HCSO patrol officer, saw A.C. in the back of an ambulance and observed
that A.C.’s hair was disheveled, her pants were torn, and she had a backpack. A.C.
told Deputy McNabb that while she was walking home from school, two white males
in a purple van grabbed her and drove her around the neighborhood. A.C. also told
the deputy that there was a white girl in the van around seven years old and that the
men drove her and the other girl around Channelview all night and finally drove them
to a street off Leaden Hall. A.C. also reported that one of the men was having sex
with the other girl. She said that the other man pulled her pants down and stuck his
finger in her vagina. She stated that the man then pulled down his own pants, put on
a condom, and said, “We’re going to get groovy.” At that point, A.C. said that she
kicked him. Then, both of the men got out of the van and went into a house. A.C.
said that she was able to escape from the van and run to a friend’s house on
Stevenage, where her friend’s father called the police. At the Wallisville substation,
A.C. told HCSO Deputy Ackley a similar story about the two men. A.C. described
one man as having long white-blond hair and tattoos and the other as a fat, white man
with straight, black hair. 
          Carr, his wife, and A.C. went to a room with Deputy Ackley to discuss A.C.’s
account of what happened, because Carr did not believe A.C.’s story. When Carr
demanded that she tell the truth, A.C. said that the kidnapping story was a lie and that
appellant, her mother, had actually taken her.
          A.C. withdrew her account about the two men and related an assault by
appellant. A.C. stated that she was scared because she recently had got into trouble
for changing her grades on her report card, knew her father was going to give her a
whipping for it, and decided to call appellant. Appellant and Tangela Rochelle
picked A.C. up while she was on her way to her friend’s house and took her to their
house. Appellant told A.C. that her father did not love her and only loved his
stepchildren. A.C. said that appellant and Rochelle invented the story that A.C. had
been abducted and raped. Appellant and Rochelle explained to A.C. that her father
would look like a bad parent and appellant could regain custody of A.C. if they could
show that an abduction happened in front of his house. In an attempt to prove that
A.C. was abducted, appellant tore A.C.’s clothes and poured wine on her. To have
physical evidence of a sexual assault, at Rochelle’s suggestion, appellant inserted her
finger into A.C.’s female sexual organ. Rochelle then suggested that they hide A.C.
in a garbage bag in the closet in case the police come looking for her. A.C. stayed in
the closet until the next morning when appellant gave her a condom and dropped her
off on the other side of town. After A.C. related to Deputy Ackley what appellant had
done to her, her demeanor completely changed. Deputy Ackley described A.C. as
still slightly scared but much calmer than she had been.
          A.C. was taken for a medical examination at the Children’s Assessment Center. 
Dr. Lahoti, a physician who specializes in evaluating children who possibly have
been sexually abused, examined A.C. Although she did not find any physical
evidence of sexual assault, Dr. Lahoti explained that she would not expect to find
physical evidence from digital penetration of the female sexual organ. A.C. told Dr.
Lahoti that her “mama had said act like somebody had raped me and she said she’d
stick her fingers up me that’s why I’m here.” When Dr. Lahoti asked if her mother
had actually done so and if it hurt, A.C. nodded yes.
          At trial, A.C. testified that appellant took her to the apartment that appellant
shared with Rochelle, and that appellant tore her clothes, poured alcohol on her, and
digitally penetrated her sexual organ, causing her pain. A.C. also related that
appellant put her in the closet in a trash bag on a shelf. A.C. heard police officers
come by the apartment that night but could not see them because she was in the
closet. A.C. stated that appellant dropped A.C. off at A.C.’s friend’s house the next
morning, and gave her a condom, instructing her to say that the men who abducted
her left the condom behind. A.C. testified that appellant fabricated the story about
the two men who took her. At her friend’s house, A.C. asked her friend’s father to
call the police. A.C. reported that when she told the police the story as appellant had
instructed, she was uncomfortable because she “knew that it didn’t really happen.” 
She felt better when she told the truth.
          The State also presented the testimony of Sarah Holt, a person who lives on the
same street as Carr. She testified that between 3:45 and 4:00 p.m. on January 13, she
saw a green Ford Taurus parked in Carr’s driveway. The State also presented the
testimony of Deputy Ackley, who testified that when he went to appellant’s
apartment, he did not go inside or take pictures. 
          Appellant’s defensive theory at trial was that A.C. lacked credibility and had
fabricated the claims against her. Rochelle, appellant, and appellant’s son, Dennis
Maxie, who was 15 years of age, each testified that A.C. was not at appellant’s house
on January 13, as A.C. claimed. They also testified that they learned of A.C.’s
disappearance when Carr called around 6:00 p.m. on January 13. They stated further
that the police came and searched the apartment that night but did not find A.C.
because she was not there. After the police left, appellant and Rochelle went to
A.C.’s grandmother’s house to look for A.C. Rochelle admitted that she had a prior
criminal record. Rochelle, appellant, and Carr each testified that A.C. often told lies. 
Appellant acknowledged that she was previously convicted of four felonies, that she
drove a “money green” Ford Taurus, and that she had been in a lesbian relationship
with Rochelle. 
Sufficiency of the Evidence
          Appellant contends that the evidence is legally and factually insufficient to
sustain her conviction because (1) the complainant, A.C., lied to everyone she spoke
with concerning the case; (2) no medical evidence indicated that A.C. was sexually
assaulted; (3) the police did not find A.C. at appellant’s apartment after searching it
on the night of her disappearance; and (4) three witnesses stated that A.C. was not at
the apartment that night.
          In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness’s
testimony. Id.
          In a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set aside the verdict only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 1697
(2005). In a factual sufficiency review, we may not substitute our own judgment for
that of the factfinder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
In conducting a factual sufficiency review, we must consider the evidence that the
appellant contends most undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003). Unless the available record clearly reveals that a
different result is appropriate, we defer to the jury’s determination concerning the
weight to place upon conflicting testimony, because resolution of facts often turns on
evaluation of credibility and demeanor. Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim.
App. 2000). 
          To establish the offense of aggravated assault of a child, as alleged here, the
State must prove that appellant intentionally or knowingly caused the penetration of
the sexual organ of a child by any means, and the victim was younger than 14 years
of age. Tex. Pen. Code Ann. §§ 22.021(a)(1)(A)(i), 22.021(a)(2)(B) (Vernon Supp.
2004–2005).
          Appellant contends the testimony of A.C. lacks credibility because A.C.
initially told the police that she was abducted by two white men, and because several
testifying witnesses, including her father, admitted that A.C. had lied in the past. 
Although the record undisputedly shows that A.C. initially told a different story and
that she had lied about other things in the past, the record further shows that A.C.
testified at trial that appellant sexually assaulted her. This testimony was consistent
with the statements she made to Carr and Deputy Ackley. Moreover, circumstantial
evidence supports A.C.’s claims about appellant because the record shows that her
clothes were torn, a green car was seen parked near her house on the afternoon that
she disappeared, appellant drove a green car, and A.C. was missing from her father’s
house all night long. Appellant essentially asks that we conclude that A.C. is not
credible, even though the jury necessarily found her credible by convicting appellant. 
As an appellate court, we must defer to the jury as the sole judge of a witness’s
credibility. See Penagraph, 623 S.W.2d at 343. The jurors were entitled to believe
or disbelieve A.C.’s testimony and to give it the weight and credibility that they felt
it deserved. See Johnson, 23 S.W.3d at 8.
          Appellant further contends that the absence of medical findings makes the
evidence insufficient. However, there is no requirement that a victim’s testimony of
penetration be corroborated by medical testimony or other physical evidence. See
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet.
ref’d) (stating that testimony alone of child complainant is sufficient to support
conviction of sexual assault); Ruiz v. State, 891 S.W.2d 302, 304 (Tex. App.—San
Antonio 1994, pet. ref’d). Moreover, the record here shows that although no physical
evidence shows that a sexual assault occurred, the examining physician also
explained that she would not expect physical evidence when the assault was by digital
penetration of the female sexual organ. See id. (holding evidence sufficient to find
defendant guilty of aggravated kidnapping inclusive of sexual assault even though
State did not take fingerprints, blood, or semen samples).
          Appellant also contends that the evidence is insufficient to support appellant’s
conviction because three witnesses, appellant, her son, and Rochelle, all testified that
A.C. was not at the apartment on the night she disappeared from her home. 
Reconciliation of conflicting testimony is within the exclusive province of the jury. 
Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury was
within its discretion to find not credible appellant and her girlfriend, who both had
criminal records, and appellant’s son, who may have been biased because of his
relationship with appellant. We must defer to the jury’s credibility determination of
the witnesses under these circumstances. See Johnson, 23 S.W.3d at 8.          
          Appellant also contends that the evidence is insufficient because the police
made no effort to verify many of the details of the offense. Specifically, appellant
contends that the evidence is insufficient because (1) the police did not find A.C. in
appellant’s apartment when it was searched, (2) Deputy Ackley did not interview the
first outcry witness, the father of A.C.’s friend, and did not go to the location, (3)
Deputy Ackley did not confirm that there was a closet with a shelf where the crime
could have occurred in appellant’s apartment, (4) Deputy Ackley relied exclusively
on A.C.’s word, and (5) the deputy who searched appellant’s house did not testify and
no written report described exactly what portion of the apartment was searched. We
must defer to the jury’s determination of how heavily to weigh the evidence. 
Penagraph, 623 S.W.2d at 343. The jury acted within the bounds of its discretion in
determining from the evidence presented at trial that A.C. was well-hidden in the
closet and outside the view of the officer who searched appellant’s house, and that
A.C.’s testimony was sufficient evidence to establish the aggravated sexual assault. 
          Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found the essential elements of the aggravated
sexual assault of a child beyond a reasonable doubt and therefore hold that the
evidence is legally sufficient to sustain appellant’s conviction. See King, 29 S.W.3d
at 562. Additionally, viewing all of the evidence in a neutral light, we conclude that
the evidence is not so weak that the verdict is clearly wrong and manifestly unjust,
and the contrary evidence is not so strong that the standard of proof beyond a
reasonable doubt could not have been met, and therefore hold that the evidence is
factually sufficient to support appellant’s conviction. See Escamilla, 143 S.W.3d at
817.
          Accordingly, we overrule appellant’s first and second points of error. Ineffective Assistance of Counsel
          In her third point of error, appellant contends that she received ineffective
assistance of counsel when her trial counsel (1) introduced three remote prior felony
convictions during his direct examination of her, (2) did not request a limiting
instruction that appellant’s prior convictions could only be considered for
impeachment, and (3) opened the door to testimony from a second outcry witness. 
          To prevail on a claim of ineffective assistance of counsel, the defendant must
show that trial counsel’s performance was deficient and a reasonable probability
exists that the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The first prong of the
Strickland test requires that the defendant show that counsel’s performance fell below
an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). Thus, the defendant must prove objectively, by a preponderance
of the evidence, that trial counsel’s representation fell below professional standards. 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong
requires that the defendant show a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812. Because
the reviewing court must, however, indulge a strong presumption that counsel’s
conduct falls within the wide range of reasonable professional assistance, the
defendant must overcome the presumption that, under the circumstances, the
challenged action “might be considered sound trial strategy.” Strickland, 466 U.S. at
689, 104 S. Ct. at 2065. Any allegation of ineffectiveness must be firmly founded in
the record, which must demonstrate affirmatively the alleged ineffectiveness. 
Thompson, 9 S.W.3d at 813 (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996)). We will not speculate to find trial counsel ineffective when the
record is silent on counsel’s reasoning or strategy. Robinson v. State, 16 S.W.3d 808,
813 n.7 (Tex. Crim. App. 2000). In rare cases, however, the record can be sufficient
to prove that counsel’s performance was deficient, despite the absence of affirmative
evidence of counsel’s reasoning or strategy. Id.
          Concerning appellant’s contention that her trial counsel was ineffective
because he introduced three convictions that were remote and inadmissible, the record
shows that trial counsel elicited the following testimony during his direct examination
of appellant: in 1989, appellant was convicted in a felony-narcotics case and
sentenced to three years in prison, which she served in Harris County; in 1990,
appellant was convicted in two felony-narcotics cases; and in 1992, appellant was
convicted for possession of cocaine and paroled for that offense in 1999. At the time
of trial, on May 5, 2004, appellant was still on parole for the latter conviction. 
Appellant acknowledges that her latter conviction was admissible.
          Rule 609(b) of the Rules of Evidence states, as follows:
Evidence of a conviction under this rule is not admissible if a period of
more than ten years has elapsed since the date of the conviction or of the
release of the witness from the confinement imposed for that conviction,
whichever is the later date, unless the court determines, in the interests
of justice, that the probative value of the conviction supported by
specific facts and circumstances substantially outweighs its prejudicial
effect.

          The record does not show whether trial counsel introduced appellant’s
convictions that were older than ten years old in an attempt to show that she was
honest with the jury by coming clean with her entire background or introduced the
evidence for some other reason.


 The record is similarly silent regarding counsel’s
reason for not requesting a limiting instruction that appellant’s prior convictions
could only be considered for impeachment purposes when the evidence was
introduced at trial. However, the jury charge contains a limiting instruction
concerning the jury’s reliance on evidence of prior convictions.


 We therefore
conclude that the record does not show that counsel’s performance was deficient. To
hold trial counsel ineffective based on the grounds that appellant asserts here, when
the record is silent concerning trial counsel’s strategies but shows that the court’s
charge contains a limiting instruction, would require that we speculate, which we
decline to do. See Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st
Dist.] 1996, no pet.). We must, therefore, presume that counsel had a plausible reason
for his actions. Thompson, 9 S.W.3d at 814. 
          Appellant contends that trial counsel was ineffective because he opened the
door to testimony from a second outcry witness. The record shows that the State’s
outcry notice indicated that the prosecutor intended to introduce the victim’s outcry
statement through both Deputy Ackley and Anthony Carr.


 Appellant’s trial counsel
objected to the use of two outcry witnesses because outcry statements apply to
statements made to “the first person,” not people. See Tex. Code Crim. Proc. Ann.
art. 38.072 (Vernon 2005). The trial court ruled that it would allow Carr to testify as
an outcry witness but that it would later determine whether Deputy Ackley would be
allowed to testify as an outcry witness as well. After appellant’s counsel cross-examined Carr, the State was granted permission to approach the bench where the
State argued that because appellant’s counsel had asked about A.C.’s outcry statement
made to him, counsel waived any objection to the second outcry witness. Appellant’s
trial counsel stated that this was “probably true.”
          Proper trial strategy can consist of cross-examination questions that attempt to
discredit a witness by pointing out inconsistencies in the witness’s testimony when
compared to another witness’s version about the same event. See Josey v. State, 97
S.W. 3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). However, cross-examination that bolsters rather than challenges the prosecution’s case can be
ineffective assistance of counsel. Ex Parte Walker, 777 S.W.2d 427, 432 (Tex. Crim.
App. 1989). During appellant’s trial counsel’s cross-examination of Carr, counsel
asked Carr why he did not believe A.C.’s initial story and whether A.C. lied
frequently. The record is silent concerning trial counsel’s motives for asking these
questions, and this is not one of those rare cases in which the record shows that no
plausible strategy could have been employed. We conclude that appellant has not
made the required showing that trial counsel was deficient in his performance. See
Thompson, 9 S.W.3d at 813.
          We conclude that appellant has not met his burden of proving ineffective
assistance of counsel by a preponderance of the evidence. 
          We overrule appellant’s third point of error.
Conclusion
          We affirm the judgment of the trial court.
 

  
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack, Justices Alcala, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).