NO.
12-04-00356-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

LEE
DOUGLAS JACKS,     §          APPEAL FROM THE FIRST

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SAN AUGUSTINE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Lee Douglas
Jacks was convicted of theft of property of more than $1,500.00, a state jail
felony.  In two issues, Appellant
challenges the legal and factual sufficiency of the evidence to support his
conviction.  We affirm.

Background

            Appellant met the victims, R.D. and
Jewel Turner, through his wife, Debbie Sue Jacks.[1] Debbie initially
worked a few hours each week caring for the Turners, an elderly couple in their
eighties.  However, when the Turners’
health began declining, their son[2] Robert requested that Debbie work
full time, and eventually, several other caregivers were hired to provide care
twenty-four hours a day, seven days a week. 

            Based upon reports Robert received
from Elaine Coulter, one of the Turners’ caregivers, Robert fired Debbie.  He then contacted the Texas Department of
Family and Protective Services, Adult Protective Services division (APS), and
drove to the Turners’ home to assess the situation.  Mrs. Turner handled the couple’s financial
matters and kept all financial or business documents organized in files located
in a filing cabinet.  She was a
meticulous bookkeeper.  After searching
extensively, Robert was unable to find all of the recent records.  After reviewing the records that he found, he
was “appalled” at the number and dollar amounts of checks written to Debbie and
her mother, Dorothy Ann Latham.  At the
time of trial, Mr. Turner had died and Mrs. Turner was in a nursing home,
suffering from advanced Alzheimer’s.

            Rhonda Brooks, a certified adult
protective services supervisor for APS, investigated the Turners’ case.  During her investigation, Brooks found more
than sixty-five checks had been written to Debbie, Dorothy, or to third parties
for the benefit of Debbie, Dorothy, and their families.  Brooks concluded that the Turners’ case was
financial exploitation based on undue influence.  

            On April 25, 2001, the San Augustine
County grand jury indicted Appellant, Debbie, Dorothy, Donald Latham, and Betty
Holloway for theft of  more than
$100,000.00 but less than $200,000.00. 
Appellant pleaded not guilty and was tried before a jury.[3]  The jury convicted Appellant of theft of more
than $1,500.00 but less than $20,000.00, sentenced him to two years of
imprisonment, probated for ten years, and assessed a $10,000.00 fine.  This appeal followed.

 

Sufficiency of the
Evidence

            In his first and second issues,
Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction.  

Standard of
Review

            Legal sufficiency is the
constitutional minimum required by the Due Process Clause of the Fourteenth
Amendment to sustain a criminal conviction. 
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio
1999, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979)).   In reviewing a legal sufficiency challenge,
the appellate court examines the evidence in the light most favorable to the
judgment to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Johnson v. State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993) (citing Jackson, 443 U.S. at 319,
99 S. Ct. at 2789).  The conviction will
be sustained “unless it is found to be irrational or unsupported by more than a
‘mere modicum’ of the evidence.”  Moreno
v. State, 755 S.W.2d 866, 867 (Tex. 
Crim. App. 1988).  The jury is the
exclusive judge of (1) the facts, (2) the credibility of the witnesses, and (3)
the weight to be given to the testimony of each witness.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994); Penagraph v. State, 623 S.W.2d
341, 343 (Tex. Crim. App. 1981).  Any
reconciliation of conflicts and contradictions in the evidence is entirely
within the jury’s domain.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  The jury is entitled to draw reasonable
inferences from the evidence.  Benavides
v. State, 763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet.
ref’d).  A successful legal sufficiency challenge
results in the rendition of an acquittal by the reviewing court.  See Tibbs v. Florida, 457 U.S.
31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).  

            In conducting a factual sufficiency
review, the appellate court must review all of the evidence, but not in the
light most favorable to the prosecution. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000).  We must determine whether a
neutral review of all the evidence, both for and against the challenged
finding, demonstrates that a rational juror could find guilt beyond a
reasonable doubt.  Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
Evidence is factually insufficient when evidence supporting the verdict,
considered by itself, is too weak to support the finding of guilty beyond a
reasonable doubt.  Id.  Evidence is also factually insufficient when
contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met.  Id.
at 484-85.  In performing a factual
sufficiency review, we defer to the fact finder’s determinations, including
those involving the credibility and demeanor of witnesses.  Id. at 481.  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.  Id. at 484.  

Applicable Law

            A person commits theft if he
unlawfully appropriates property with intent to deprive the owner of the
property.  Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp. 2005).  An offense under this section is a state jail
felony if the value of the property stolen is $1,500.00 or more but less than
$20,000.00.  Id.  § 31.03(e)(4). Appropriation of property is
unlawful if it is without the owner’s effective consent.  Id. § 31.03(b)(1).  “Appropriate” means to acquire or otherwise
exercise control over property other than real property.  Id. § 31.01(4)(B).  “Deprive” means to withhold property from the
owner permanently or for so extended a period of time that a major portion of
the value or enjoyment is lost to the owners. 
Id. § 31.01(2)(A). “Effective consent” includes consent by
a person legally authorized to act for the owner.  Id. § 31.01(3).  Consent is not effective if induced by
deception or coercion or given by a person who by reason of mental disease or
defect or  of advanced age is known by
the actor to have diminished capacity to make informed and rational decisions
about the reasonable disposition of property. 
Id. 

            Under the law of parties, an actor
is criminally responsible as a party to an offense if, acting with intent to
promote or assist in the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid another person in committing the
offense.  See id. §§ 7.01,
7.02.  The evidence is sufficient to
support a conviction under the law of parties where the actor is physically
present at the commission of the offense and encourages the commission of the
offense either by words or other agreement. 
See Cordova v. State, 698 S.W.2d 107, 111 (Tex.
Crim. App. 1985).  The evidence must show
that, at the time of the offense, the parties were acting together, each
contributing to their common purpose.  See
id.  When determining
whether parties were acting together, the court may examine the events
occurring before, during, and after the commission of the offense and may rely
on actions of the defendant that show an understanding and common design to
commit the offense.  See id.  Circumstantial evidence may be used to prove
one is a party to an offense.  See id.  Each fact need not directly and independently
point to one’s guilt as long as the cumulative effect of the incriminating
facts is sufficient to support the conviction. 
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App.
2004).  A conviction may rest on the
cumulative strength of all incriminating circumstances even if it is based on
circumstantial evidence.  See Conner
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  

Legal
Sufficiency

            Robert Turner testified that he
remembered seeing a check payable to Dorothy Latham for $2,000.00, but could
offer no explanation for the check.  He
said that it would surprise him if the 
check was for putting shingles on the roof.  Additionally, Robert did not recall any
checks written for the purchase of shingles. 
The exhibits admitted at trial showed that check #2905 was made payable
to Dorothy Latham for $2,000.00 and included the notation “Loan/Roofing” in the
memo section.  However, Robert was
unaware that any work had been done on his parents’ roof.  Robert also testified that he saw two new
four wheelers, a boat, and a travel trailer parked between Appellant’s home and
the home of his codefendant, Donald Latham. 
The court admitted into evidence copies of the Turners’ checks written
to Debbie totaling $63,185.82, to Dorothy totaling $18,394.71, and to third
parties for their benefit and that of their families totaling $35,126.36.  

            Elaine Coulter testified that she
found a significant number of the Turners’ checks written for large amounts
that had been issued to Debbie and Dorothy. 
Because of Mrs. Turner’s diminished mental capacity, Coulter was
concerned that the Turners were being exploited.  After showing Mrs. Turner all the checks that
had been written to Debbie and Dorothy, Mrs. Turner said, “but I told her no.”  Coulter did not recall seeing checks payable
to Appellant or Donald.  She recalled
meeting Donald at the lake where the travel trailer was parked at the time.  Coulter knew nothing about Appellant and
Donald roofing the Turners’ house and could say nothing concerning their guilt
for the theft charge “because I don’t know them.”

            APS caseworker Rhonda Brooks
testified that Debbie and Dorothy received at least  $115,341.53 in goods and money from the
Turners, not including earnings paid to Debbie for her services.  Personal property purchased with the Turners’
money included a sport utility vehicle, a boat and motor, a travel trailer, a
computer, furniture, and appliances.  A
check for $ 22,562.28 was written to pay off the balance owed on Debbie’s sport
utility vehicle.  Furniture costing the
Turners at least $2,300.00 was delivered to Appellant’s house.  The travel trailer was purchased with a check
for $4,661.00.  Debbie’s computer was
purchased with a check for 
$1,100.00.  Brooks testified that
both Mr. and Mrs. Turner were suffering from dementia to some degree, but Mrs.
Turner’s mental capacity was worse than Mr. Turner’s.  She concluded that the Turners had been
financially exploited between the years 1997 and 2000. Neither Appellant nor
Donald was named as a suspect in her investigation. 

            Bank manager Vickie Felts testified
that she was concerned with the money transactions flowing from the Turners’
accounts to the accounts of Appellant and Donald.  The Turners had $116,000.00 in certificate of
deposit accounts, the largest portion of which had been depleted.  She said that the actions of Debbie and
Dorothy concerned her considering that Mrs. Turner’s personality had changed
from being a meticulous bookkeeper to becoming lax with her money.  Felts testified that Appellant and his wife
had a joint checking account at the bank. 
On one occasion, Debbie brought Mrs. Turner into the bank to withdraw
$6,000.00 from the Turners’ account so that Debbie could buy a boat for
Appellant.  After Felts began questioning
Debbie concerning the transaction, 
Debbie became “very nervous and told me that she was sick” and went
outside.  At some point, Felts became so
concerned that she contacted APS, but never heard the results of the
investigation.    

            Donald testified that the Turners
were “real good friends” and that they would come to his house for Thanksgiving
and Christmas.  He was married to
Dorothy, and he admitted that  they had a
joint checking account although he said that Dorothy took care of the finances
for the family.  Donald would be paid for
his work driving a log truck and then he would give his paycheck to
Dorothy.  She gave him approximately
$40.00 cash each week for miscellaneous items. 
Donald said he never made deposits to the checking account and wrote
only a few checks.  He conceded that
Dorothy told him that the Turners loaned them $700.00 to fix their car.  Donald claimed he put a new roof on the Turners’
home, for which he was paid.  However, he
said he never saw the check.  Donald said
he knew nothing of his daughter’s and wife’s actions until they were indicted
and denied knowledge of over $18,000.00 deposited into his account from the
Turners’ accounts.  Had he known, he’d
have “put [his] foot down.”  Donald
admitted that he and his wife filed bankruptcy close to the time that
Appellant  filed in 1996.  He claimed he did not know where the money
was coming from at Appellant’s house – “that’s [their] household. . . . I seen
[saw] a lot of stuff going on; but it wasn’t [any] of my business.”  Donald said that he never drove Debbie’s
sports utility vehicle or used the travel trailer or four wheeler.  However, he admitted that Dorothy moved the
travel trailer to the new restaurant business that he and his wife owned.  Donald also conceded that he has not paid
back any money or returned any property to the Turners.  

            Appellant testified on his own
behalf at trial.  He said that he met the
Turners through Debbie’s association with them. 
The Turners joined Appellant, Debbie, Dorothy, and Donald for
Thanksgiving and Christmas for several years. 
Appellant mowed the Turners’ yard and did various odd jobs for them,
including helping Donald work on the Turners’ roof.    

            Appellant said that he was married
to Debbie, lived with her, and had a joint checking account with her.  He denied having any knowledge of the
numerous checks totaling over $60,000.00 deposited into his account from the
Turners’ accounts.  Appellant admitted
that he and his wife filed bankruptcy in 1996. 
He denied taking anything from the Turners or knowing anything about
Debbie’s actions.  Had he known, he would
have stopped her “because it wasn’t right.” 
Appellant conceded that the Turners helped Debbie get the Ford Explorer,
but denied any specific knowledge of the vehicle transaction.  He drove the Explorer “once or twice.”  He also said that they still owned the travel
trailer although he denied using it.  He
conceded, however, that he had returned none of the items nor had he paid back
any money to the Turners.

            From this evidence, the jury could
have found that the Turners, by reason of diminished mental capacity or
advanced age, were no longer able to make reasonable property dispositions;
thus, Appellant did not have the Turners’ effective consent to acquire or
exercise control over their property. 
Considering the evidence regarding the travel trailer, the Turners’
roof, and their $2,000.00 check marked “Loan/Roofing,” the jury could have
found that Appellant was acting together with Donald, with each contributing
some part toward the execution of the common purpose of depriving the Turners
of their property.[4]  Further, under
the law of parties, the jury could rationally conclude that Appellant was aware
of unlawful appropriations from the Turners and that he solicited or encouraged  the unlawful conduct with the intent to
promote the commission of the offenses. Although Appellant and Donald claimed
they committed no offenses and that they were unaware of the unlawful actions
of their respective wives, they conceded that they had made no attempts to
return any of the property or repay any money to the Turners.  Considering the events occurring before,
during, and after the commission of the offense, the jury could have found that
the actions of Appellant and Donald show an understanding and common design to
commit the offense by exercising control over the property.  A rational trier of fact could have found
beyond a reasonable doubt that Appellant and Donald unlawfully exercised
control or appropriated more than $1,500.00 of the Turners’ property with the
intent to deprive them of their property. 
Even if the evidence is circumstantial, a conviction may rest on the
cumulative strength of all incriminating circumstances.  See Conner, 67 S.W.3d at
197.  After examining all the evidence in
the light most favorable to the judgment, Appellant’s legal sufficiency
argument fails; consequently, we overrule his first issue.

Factual
Sufficiency








            The record also includes evidence
that is contrary to the verdict. 
Appellant admitted that he accepted money from the Turners, but
contended it was payment for mowing and working on their roof.  He said that the only boat he owned was
purchased years before Debbie knew the Turners, claiming that any boats seen
near his house belonged to Donald.  He
denied knowing anything about how Debbie purchased a new four wheeler.  Appellant denied receiving any benefit from
the four wheeler, travel trailer, appliances, and new furniture.  He denied that he had taken any property from
the Turners except for earned wages and gifts. 
Appellant claimed to be unaware of his wife’s unlawful actions.  He depended on her to handle the family’s
financial matters, stating that he went to school  through the tenth grade and can only
marginally read and write. He claims to be unable to write a complete check,
asserting that someone at the store 
writes the store’s name and amount on the check and then he signs
it.  When asked if he ever questioned
Debbie about the money or the property they acquired, Appellant stated that he
never asked because he depended on her to handle the money.  He claimed he knew nothing about the
furniture from Bealls, the appliances, or the computer purchased by the
Turners.  According to APS specialist
Rhonda Brooks, her investigation of the exploitation of the Turners centered on
Debbie.  Bank manager Vickie Felts never
saw Appellant in the bank with Mrs. Turner and knew of no specific
improprieties concerning him.

            The jury accepted the State’s
version of the facts and found against Appellant.  In our evaluation, we should not
substantially intrude upon the jury’s role as the sole judge of the weight and
credibility of witness testimony.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997).  We have conducted a neutral
review of all the evidence, both for and against the finding.  The record does not reveal any evidence that
causes us to conclude that the proof of guilt is too weak to support the
finding of guilt beyond a reasonable doubt. 
Nor does the record reveal contrary evidence so strong that guilt cannot
be proven beyond a reasonable doubt. 
Thus, we hold that the evidence is factually sufficient to support the
jury’s verdict.  Consequently, we
overrule Appellant’s second issue.

Disposition

            Having overruled both of Appellant’s
issues, we affirm the judgment of the trial court.

 

 

 

                                                                                                     DIANE DEVASTO    

                                                                                                                Justice

 

 

Opinion delivered April 28, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] We have issued our
opinion in the appeal of Appellant’s wife and mother-in-law, Debbie Sue Jacks
and Dorothy Ann Latham, respectively. 
For a more complete recitation of the background facts, see Jacks
v. State, No. 12-04-00355-CR, 2006 WL 629036 (Tex. App.–Tyler Mar. 15,
2006, no pet.) (not designated for publication);  see also Latham v. State, No.
12-04-00354-CR, 2006 WL 859687 (Tex. App.–Tyler Mar. 31, 2006, no pet. h.) (not
designated for publication).  





[2] R.D. Turner had two
sons.  Robert Turner lived in Topeka,
Kansas, and Raymond Turner lived in Atlanta, Georgia.  After R.D.’s first wife died, he married
Jewel Turner when the boys were youths. 
Robert testified that he considered Jewel to be his mother.





[3] Five persons were
indicted in a single indictment in Cause Number CR 7365 in the 1st District
Court of San Augustine County.  Appellant
and his father-in-law, Donald Melvin Latham, were prosecuted together in a single
trial, from which the instant appeal arises. 
Appellant’s wife, Debbie Sue Jacks, and mother-in-law, Dorothy Ann
Latham, were prosecuted together in a single trial prior to Appellant’s
trial.  Appellant’s sister-in-law, Betty
Holloway, made restitution of $1,500.00, and the case against her was
dismissed.





[4] Although five persons
were indicted together in a single indictment, Appellant and Donald were tried
together in one trial, separate from Debbie and Dorothy’s trial.  The court’s charge in the instant case listed
only Appellant and Donald as parties to the offense.  Thus, in reviewing the sufficiency of the
evidence in this case, our examination is primarily focused on the evidence
relating to Appellant and Donald.