Opinion filed January 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 30,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00334-CR

                                                    __________

 

                                 SHERRY LYNN SLOUGH, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 238th District Court

                                                        Midland
County, Texas

 Trial
Court Cause No. CR31281

 



 

                                                                   O
P I N I O N

The
jury convicted Sherry Lynn Slough of the state jail felony offense of credit
card abuse. The trial court assessed appellant=s
punishment at confinement for twelve months in the State Jail Division of the
Texas Department of Criminal Justice.  In two issues, appellant challenges the
legal and factual sufficiency of the evidence to support her conviction.  We
affirm. 

                                                                    Background








The
State charged appellant with credit card abuse under Section 32.31(b)(4) of the
Penal Code.  Tex. Penal Code Ann.
' 32.31(b)(4) (Vernon
Supp. 2008).  Section 32.31(b)(4) provides that a person commits an offense if Ahe steals a credit card.@  The term Acredit card@ is defined as Aan identification card,
plate, coupon, book, number, or any other device authorizing a designated
person or bearer to obtain property or services on credit,@ and A[t]he term includes the
number or description of the device if the device itself is not produced at the
time of ordering or obtaining the property or service.@  Tex.
Penal Code Ann. '
32.31(a)(2) (Vernon Supp. 2008).  The indictment alleged that, on or about
December 14, 2004, appellant Adid
then and there intentionally and knowingly steal a credit card, to-wit: an MBNA
MasterCard number . . . belonging to Nancy Egan from Nancy Egan.@ 

The
State reindicted appellant with credit card abuse under Section 32.31(b)(1)(A)
of the Penal Code. Tex. Penal Code Ann.
' 32.31(b)(1)(A)
(Vernon Supp. 2008).  Section 32.31(b)(1)(A)  provides that a person
commits an offense if, Awith
intent to obtain a benefit fraudulently, he presents or uses a credit card or
debit card with knowledge that: the card, whether or not expired, has not been
issued to him and is not used with the effective consent of the cardholder.@  Later, the State moved to
dismiss the reindictment, and the State proceeded to trial on the original
indictment.  The trial court instructed the jury on the original indictment.

In
her brief, appellant acknowledges that the evidence was sufficient to show that
she presented or used Egan=s
credit card without authorization and that, therefore, the evidence would have
supported a conviction for the offense alleged in the reindictment.  However,
because the State proceeded to trial under the original indictment, the State
was required to prove that appellant stole the credit card.  Appellant contends
that the evidence was legally and factually insufficient to show that she stole
the credit card.

                                                              Standard
of Review








To
determine if the evidence is legally sufficient, the appellate court reviews
all of the evidence in the light most favorable to the verdict and determines
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007);
Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine
if the evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence. Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

                                                                Evidence
at Trial

In
late 2004 and early 2005, Nancy Rapp had an MBNA MasterCard.  The card was
issued to Nancy in her prior name, Nancy Egan.  Nancy identified the card by
its number during her testimony.  In early 2005, Nancy discovered that
unauthorized charges totaling $3,501.13 had been made on the card when she
examined the statement for the card.  The charges had been posted during
December 2004 and January 2005.  The evidence showed that the charges had been
made to Overstock.com, Reliant Energy, 911 Health Shop.com, Travelocity, Virgin
Mobile, Amazon.com, Wal-Mart.com, Southwest Airlines, and a Marriott Hotel in
Anaheim, California.  On February 8, 2005, Nancy informed the police of the
unauthorized charges.

At
the time of trial, Nancy had been married to Darin Rapp for about four years. 
Appellant was Darin=s
ex-wife.  They had been married about seventeen years ago, and their marriage
had lasted for about eight months.  They had a child, Alexis Rapp, who was
seventeen years old at the time of trial.  During the relevant time period,
Alexis lived part-time with appellant and the remainder of the time with Nancy
and Darin.  The evidence showed that Darin provided financial support to
appellant throughout the years.  For example, Darin testified that he had an
American Express card and that he permitted appellant, in his presence, to call
in the number of his American Express card to pay utility bills.  Darin also
permitted appellant to use a low limit credit card that had been issued to him.
 He also said that A[h]e
probably couldn=t
count how many times [he] wired money to [appellant].@








Appellant
testified at trial.  She said that she used Nancy=s
MBNA MasterCard number to make some of the above charges over the internet,
including charges of $257.98 and $583.30 to Travelocity, a charge of $1,371.84
to the Marriott Anaheim, and a charge of $261.30 to Southwest Airlines.  These
charges related to a trip that appellant took to see her son in California in
December 2004.  Appellant used Nancy=s
name (Nancy Egan) when she made these charges on the internet. Appellant
testified that Nancy never personally consented to her using the card. 
Appellant said that she made the Travelocity reservation on the computer when
Darin, Alexis, and Alexis=s
friend, Caryn, were present.  She also said that Darin Rapp Acalled out the number with
the plus 3 on the card@
when she made the reservation.  Alexis testified that she was present when
appellant made the travel reservations on the computer and that Darin called
out the credit card number for appellant to use.  Appellant also testified that
she may have made some other internet charges on Nancy=s card, including ordering from Amazon or
Overstock, and that, if she did, ADarin
told [her] it was okay to do so.@

Nancy
testified that she often permitted Darin to use her MBNA MasterCard and that
Alexis may have used the card to buy clothes.  Alexis testified that, at one
time, she had Nancy=s
credit card number.  Alexis did not remember the card=s number at the time of trial.  Nancy
testified that no one other than Darin and Alexis had permission to use the
card.  Darin testified that Nancy allowed him to use the card from time to
time.  Darin said that he gave Alexis permission to use the card for a short
period of time before Alexis abused the use of the card.

Darin
testified that, at times, he gave other people permission to use Nancy=s MBNA MasterCard.  For
example, he said that he permitted Jesse Villarreal, a man who worked for him,
to use the card to get things for his business.  Darin said that he used drugs
in late 1994 and early 1995 and that he let some people use the card in
connection with his drug use.  These people used the card to obtain gift cards
from Wal-Mart, and in exchange for the gift cards, they gave him cocaine. 
Darin testified that he had been clean for the last two years and three months.

Darin
also testified that he never gave appellant permission to use Nancy=s credit card and that he
never gave appellant Nancy=s
credit card number.  He also specifically denied that he gave appellant the
card or its number to make the reservations to travel to California.  Darin
said that appellant may have obtained Nancy=s
credit card number from Alexis or from one of his Adope@
friends.








Nancy
also testified that, on a prior occasion, appellant used her MBNA MasterCard to
buy pizza.  Nancy said that, after the pizza incident, Darin told appellant not
to charge anything on the card.  Darin testified that, after appellant used the
card to buy pizza, he told her, AYou
don=t ever use that
freaking credit card again.@ 
With respect to the pizza incident, appellant testified that Alexis and her
friends used Nancy=s
card to purchase the pizza.  Appellant said that she signed her name (Sherry
Slough) to the receipt for the pizza.  Appellant also said that, after the
pizza incident, Darin=s
statement not to use the card again was directed to Alexis and her friends. 
Alexis testified that she was pretty sure she used Nancy=s MasterCard to buy pizza.  She also said
that, at one time, Darin told her not to use the card to order pizza but that
he later gave her permission to use the card to order pizza again.

In
February 2005, Mel Francis was a detective for the Midland Police Department. 
Detective Francis investigated Nancy=s
complaint that unauthorized charges had been made on her MBNA MasterCard.  As
part of the investigation, on February 25, 2005, Detective Francis interviewed
appellant.  Darin was present during the interview.  Detective Francis testified
that appellant did not deny that she made the charges on Nancy=s credit card and that
appellant told him she knew she did not have permission to use the card. 
Detective Francis took a recorded interview of appellant.  The interview was
played for the jury, and a copy of the recording was introduced into evidence.

Appellant
also testified that Darin agreed to pay off the charges that she made on Nancy=s credit card with back child
support that he owed her.  She said that Darin Abasically
got caught@ using
Nancy=s credit card to
help her and that he Aneeded
to cover himself.@ 
During his testimony, Darin denied that he ever agreed to pay off the charges
with back child support.

Appellant
and Darin both testified that they had prior convictions.  Appellant testified
that she had a prior felony conviction for forgery and using a credit card that
was not hers.  Darin testified that he had a conviction for delivery of a
controlled substance.

Appellant
called Lena Sturgis as a witness.  Sturgis testified that she saw Darin give
credit cards to appellant a number of times so that appellant could pay her
bills, buy things that she wanted to buy, or pay for hotel rooms.  However,
Sturgis did not know whether Darin ever gave appellant Nancy=s MBNA MasterCard. 
Appellant also called Jerry David Stone as a witness.  Stone testified that
Darin, when talking with him about a credit card being misused, told him, AI did exactly what I had to
do to save my marriage.@ 
Stone did not provide the jury with an explanation as to what he believed Darin
meant by this statement.  Stone had never seen Nancy=s MBNA MasterCard.  He said that he never saw
Darin give such a card to appellant and that he never saw or heard Darin give
appellant permission to use such a card.

In
rebuttal, the State called Tom S. Morgan, a Midland attorney, as a witness. 
Morgan testified that, several years ago, appellant worked for him for several
months.  He also testified that appellant=s
character and reputation for telling the truth were bad.








Analysis

Appellant
argues that the evidence was legally and factually insufficient to establish
that she stole a credit card.  Section 32.01(4) of the Penal Code defines Asteal@ as Ato acquire property or service by theft.@  Tex Penal Code Ann. '
32.01(4) (Vernon 2003).  A person commits the offense of theft Aif he unlawfully
appropriates property with intent to deprive the owner of property.@  Tex. Penal Code Ann. '
31.03(a) (Vernon Supp. 2008).  The term Aappropriate@ means Ato acquire or otherwise
exercise control over property other than real property.@  Tex.
Penal Code Ann. ' 31.01(4)(B)
(Vernon Supp. 2008).  The appropriation of property is unlawful if Ait is without the owner=s effective consent.@  Tex. Penal Code Ann. '
31.03(b)(1) (Vernon Supp. 2008).

Appellant
testified that Darin gave appellant Nancy=s
credit card number to make the Travelocity reservation.  Alexis provided
similar testimony.  Darin testified that he did not give appellant the credit
card number.  The jury, as the sole judge of the credibility of the witnesses
and of the weight to be given to their testimony, was entitled to accept Darin=s testimony and to reject
appellant=s and Alexis=s testimony. Articles
36.13, 38.04; Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981).  Thus, the jury was free to conclude that Darin did not give the credit
card or the credit card number to appellant.  Based on the evidence, the jury
could have reasonably concluded that appellant appropriated the card or its
number, without Nancy=s
consent, when Alexis had possession of the card or its number.  The evidence
was legally and factually sufficient to establish that appellant stole Nancy=s MBNA MasterCard or its
number.  We overrule appellant=s
issues.

                                                               This
Court=s Ruling

We
affirm the trial court=s
judgment.

 

 

TERRY McCALL

JUSTICE   

January 30, 2009

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.