**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00360-CR**
_____

**MARCUS LOUIS JAMES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Jefferson County, Texas**
**Trial Cause No. 299715**

**MEMORANDUM OPINION**

A jury convicted appellant Marcus Louis James of driving while intoxicated, and the trial judge assessed punishment at a $2000 fine and one hundred eighty days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed James on probation for eighteen months. In two appellate issues, James challenges the admission into evidence of the police officer's testimony concerning horizontal gaze nystagmus (HGN) testing of James and the

legal sufficiency of the evidence without that testimony. We affirm the trial court's judgment.

THE EVIDENCE

Detective Jeremy Bearden of the Port Arthur Police Department testified that he is assigned to the traffic unit, which primarily involves dealing with intoxicated drivers, and he is certified in standardized field sobriety tests. On August 28, 2013, Bearden stopped a white Ford pickup truck driven by James. Bearden explained that he was in the parking lot of a gas station when he saw the white truck and three other vehicles pull up to a flashing red traffic light and heard their engines revving. According to Bearden, the two vehicles in front stopped at the flashing red light and then "took off, . . . kind of like they were racing each other, keeping up with each other. The two vehicles in back went straight through the red light. They didn't stop and wait. They were obviously trying to keep up with the two in the front." Bearden got into his patrol car and began chasing the vehicles, and he eventually caught up with them as they were pulling into a parking lot and detained all four suspects.

Bearden testified that he began speaking with the four subjects, and two other officers, Officers Meza and Dinger, arrived. Meza performed field sobriety testing on two of the subjects, and Bearden performed standardized field sobriety

2

testing on the other two subjects. Bearden began his testing of James by administering the HGN test, and he testified that James exhibited six out of six possible clues. Bearden explained the three portions of the standardized HGN test: (1) checking for smooth pursuit, which involves asking subjects to follow a light at the end of a stylus with their eyes while keeping their heads still, and watching for twitching of the eyes; (2) the maximum duration test, which involves bringing the light all the way out, holding it for four to eight seconds, and having subjects focus on it the entire time that the light is extended, again checking for twitching of the eyes; and (3) "onset prior to 45 degrees[,]" which involves staying twelve inches from subjects' faces at a forty-five-degree angle, and watching for twitching of the eyes. Bearden testified that each eye is checked twice on each individual test, so there is one potential clue for each eye on each of the three HGN tests. According to Bearden, James exhibited six clues.

Bearden then administered the walk and turn test to James. Bearden explained that the walk and turn test involves having a subject walk along a straight line, heel to toe, for nine steps, turn, and take nine steps back. Bearden testified that he gave James the instructions for the test three times and demonstrated the test twice. Bearden next administered the one-leg stand after giving James instructions. Bearden explained that the one-leg stand involves

having a subject raise his foot about six inches off the ground with his hands by his side, keeping both legs straight, and looking down at the foot and counting for thirty seconds. Bearden testified that, "[o]n a one-leg stand you look for if they put their foot down, sway, use their arms for balance, or if they hop trying to stand up[,]" and he explained that these things are clues as to whether the person is intoxicated. According to Bearden, each of the field sobriety tests led him to conclude that James was intoxicated. The State then played a video recording of Bearden's encounter with James for the jury.

Bearden explained that the HGN test was not performed on camera because Bearden had stopped four subjects, and another officer had two of the subjects standing where he would normally have performed the HGN test on James, so Bearden elected to simply perform HGN testing of James beside the truck where James was already standing. Bearden testified that his training enables him to identify whether a subject is intoxicated. According to Bearden, James refused to submit to a breath test, and James admitted that he had consumed several shots and two beers that night.

Bearden explained that there is no policy or practice about placing a subject in front of the police vehicle to perform the HGN test. Bearden testified that he does not pay attention to where he administers HGN testing, and HGN clues

cannot be seen with a camera, but he does insure that the walk and turn test and the one-leg stand are on video because the clues are visible on video. According to Bearden, James started the walk and turn test too early and failed to maintain his position, both of which are clues. James also turned in the wrong direction, stopped while he was walking, and used his arms for balance. With respect to the one-leg stand test, Bearden explained that James swayed during the test, which is one of the four possible clues. After concluding the field sobriety testing, Bearden arrested James for driving while intoxicated. The State rested at the conclusion of Bearden's testimony. The jury found Bearden guilty, and the trial judge assessed punishment.

ISSUES ONE AND TWO

In issue one, James challenges the admission into evidence[1] of the police officer's testimony concerning the HGN testing of James. In issue two, James challenges the legal sufficiency of the evidence without the testimony regarding the HGN testing. Specifically, James contends Bearden deliberately and in bad faith conducted the HGN test in a location where it could not be captured on video,

[1]James filed a pretrial motion requesting exclusion of testimony regarding the HGN test administration and results, alleging that (1) Bearden intentionally administered the test off camera to prevent counsel from determining whether the examination was properly administered; (2) without reliability evidence, the test cannot meet the requirements for admission of expert testimony; and (3) the testimony "is extremely prejudicial and yet has little probative value."

and that the evidence is therefore unreliable because James's counsel could not review the manner in which Bearden administered the test. We address issues one and two together.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 900 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

We review a trial court's ruling admitting evidence for abuse of discretion, and we must uphold the trial court's ruling if it falls "within the zone of reasonable disagreement." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court errs when its ruling admitting the evidence "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Rule 702 of the Texas Rules of Evidence states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. The Texas Court of Criminal Appeals has held that testimony concerning the HGN test is scientific evidence and is therefore admissible under Rule 702 if it meets the requirements set forth in *Kelly v. State*, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992). *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994). As discussed above, James contends the HGN testing evidence was inadmissible because the HGN test was conducted, intentionally and in bad faith, in a location where it could not be captured on video, thereby violating his due process rights.

The jury heard evidence that Bearden testify that he is assigned to the traffic unit and is certified in conducting standardized field sobriety tests. Bearden explained in detail the procedure for conducting the HGN, as well as the types of clues a subject may exhibit during HGN testing, and he testified that he followed the standardized procedures in his HGN testing of James. The jury also heard Bearden explain why he did not perform the HGN testing on camera, and that there is no policy or practice about placing a subject in front of the police vehicle to perform the HGN testing. Bearden testified that HGN clues cannot be seen with a camera. No evidence was introduced to indicate that Bearden acted intentionally or in bad faith when deciding to administer the HGN test out of the camera's view.

In support of his argument, James cites *State v. Rudd*, 255 S.W.3d 293 (Tex. App.—Waco 2008, pet. ref'd). However, *Rudd* did not hold that the failure to videotape the HGN test bars its admission into evidence. *Id*. at 301-02. Rather, the *Rudd* court merely upheld the trial court's order granting a motion to suppress HGN testimony because the trial court had determined that the officer who administered the HGN test lacked credibility and failed to properly perform the test. *Id*. at 301. James cites no authorities holding that the lack of a video recording renders evidence of HGN testing inadmissible, or that lack of a video recording violates his right to due process, and we are aware of none. For all of these reasons,

8

the trial court did not abuse its discretion by admitting Bearden's testimony regarding the HGN testing into evidence. We overrule issue one.

We turn now to the legal sufficiency of the evidence. The State had the burden to prove that Bearden was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2014). The jury heard evidence that Bearden stopped James and three other subjects who appeared to be racing. Bearden testified that James exhibited six out of a possible six clues on the HGN test , and he also exhibited clues on both the walk and turn test and the one-leg stand. In addition, the jury heard testimony that James told Bearden he had consumed several shots and two beers that evening, and that James refused to submit to a breath test. The jury also viewed a video of James's performance of the walk and turn and one-leg stand tests. As we have previously explained, the trial court did not err by admitting evidence of the HGN testing. Regardless of whether or not the HGN evidence is considered, we conclude that a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *Penagraph*, 623 S.W.2d at 343. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 27, 2015
Opinion Delivered August 26, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.