**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00481-CR**
_____

**CHRISTOPHER CAMPOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 299714**

**MEMORANDUM OPINION**

A jury convicted appellant Christopher Campos of driving while intoxicated, and the trial judge assessed punishment at a $1000 fine and ninety days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed Campos on probation for one year. In two appellate issues, Campos challenges the admission into evidence of the police officer's testimony concerning horizontal gaze nystagmus (HGN) testing of Campos and the legal sufficiency of the evidence without that testimony. We affirm the trial court's judgment.

1

## THE EVIDENCE

Detective Jeremy Bearden of the Port Arthur Police Department testified that he is certified in conducting standardized field sobriety tests and is also a certified drug recognition expert. On August 28, 2013, Bearden saw four vehicles pull up to a blinking red traffic light. According to Bearden, the two vehicles in front stopped at the flashing red light and then "the two vehicles in front accelerated pretty quick[ly]; you know, trying to keep up with each other. The two vehicles in back, completely disregarded the flashing red light, also trying to keep up with the front two." Bearden testified that the four vehicles were racing. Bearden got into his patrol car and began pursuit. One of the vehicles was a white Ford pickup truck driven by Campos. Bearden caught up to the vehicles, and all four suspects eventually pulled into the Waffle House parking lot. Officer Rogelio Meza of the Port Arthur Police Department responded to the scene.

Bearden testified that standardized field sobriety tests include the HGN test, walk and turn, and one-leg stand. Bearden explained that nystagmus is the involuntary jerking of the eyes that occurs when a stimulus is moved across the subject's face. Bearden testified, "I make sure that they can see the stimulus that I'm using and then I let them know just follow it with their eyes and their eyes only; not to move their head. Once they understand that, then I start. . . . I always

2

check for equal pupil size and resting nystagmus." Bearden explained that if he does not observe resting nystagmus in the subject, he then checks for equal tracking (whether both eyes follow in the same direction) and if there is equal tracking, he checks for lack of smooth pursuit. According to Bearden, two clues exist if both eyes lack smooth pursuit. Bearden testified that he then checks for "distinct and sustained nystagmus at maximum deviation[,]" which means

> you bring their eye out to where the colored part is the only thing you see . . . and you hold that out anywhere from four to eight seconds. And . . . if that clue is actually present, you'll see their eye begin to start jerking back and forth; and again, you'll check the right and left eye twice. If they have it, each eye will be one clue.

Bearden explained that the next thing he looks for is nystagmus onset prior to forty-five degrees, and he explained that a forty-five degree angle is around the shoulder area on most people, "and if you start seeing nystagmus before you get out to that 45-degree angle, that will count as a clue. And again, you'll check each eye twice[.]" Bearden testified that exhibiting four out of six clues on the HGN test is a sign of intoxication, as is exhibiting two to four of eight clues on the walk and turn or two out of four clues on the one leg stand. Bearden testified that he was not the officer who administered the standardized field sobriety tests to Campos. The video recording from Bearden's patrol unit was admitted into evidence as State's exhibit one and was played for the jury.

3

According to Bearden, the walk and turn test is a divided attention test that involves asking the subject "to walk heel/toe for nine steps, turn, and take nine heel/toe steps back." Bearden testified that there are eight possible clues in the walk and turn test. Bearden explained that the one leg stand test involves instructing the subject to take one foot, lift it about six inches off the ground, hands by his sides, with his toe pointed, and the subject is instructed to look down at his foot and count until instructed to stop. Bearden testified that there are four clues in the one leg stand: putting the foot down, using the arms for balance, swaying, or hopping.

Officer Meza testified that he is certified in standardized field sobriety testing, which consists of the HGN test, walk and turn test, and the one leg stand test. Meza testified that he is also certified as a drug recognition expert. On August 28, 2013, Meza and Bearden were each operating marked patrol units when they saw two vehicles approach the intersection, and the vehicles "took off at a high rate of speed, spinning their tires, going southbound. It appeared like they were racing each other." Meza testified that two vehicles behind those vehicles ran through the red light. Bearden pursued the suspects, and when he advised Meza that he had found the subjects, Meza responded to the scene. Bearden gave Meza instructions regarding who was driving which car, and Meza began speaking to the four

4

drivers. Meza ultimately dealt with two of the drivers, one of whom was Campos, and Bearden dealt with the other two.

Meza testified that Campos had slurred speech, bloodshot eyes, and a strong odor of alcoholic beverage on his breath. Campos told Meza that he had consumed three beers. Meza administered the HGN test, walk and turn, and one leg stand to Campos. Meza's in-car video recorder captured Meza's encounter with Campos, and the recording was admitted as State's exhibit two and played for the jury. Meza explained that he performed the HGN test "off to the side where you can't see it[,]" but the walk and turn and one leg stand were performed on camera. Meza explained that Campos was beside the vehicle during the HGN test. Outside the presence of the jury, Meza testified that there was "[n]o reason" why he performed the HGN testing off camera, and he explained that he administered the HGN test to Campos as he had been trained to do, and he would not have done the HGN testing differently if he had performed the test on camera.

Meza testified that he administers the HGN test by having the subject put his feet together, with his arms at his sides, and positions the stimulus approximately twelve to fifteen inches from the subject's nose and checks for resting nystagmus, equal pupil size, equal tracking, lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and vertical gaze nystagmus. Meza testified that

5

he performed the HGN testing of Campos in accordance with his training. Meza explained that there are a total of six clues, and Campos exhibited six clues.

Meza explained that when he administers the walk and turn test, he instructs the subject to place his left foot on the line, place the right foot directly in front of it, touching heel to toe, and to maintain that position until he gives further instructions. Meza testified that he then asks the subject to take nine heel/toe steps forward, turn, and take nine heel/toe steps back, and he then demonstrates and instructs the subject to keep his arms at his sides, look at his feet at all times, count his steps out loud, and not to stop until he has completed the test. Meza explained that he looks for eight clues during the walk and turn test: inability to maintain balance while listening to instructions, steps off the line, does not touch heel to toe, incorrect number of steps, uses arms for balance, improper turn, stops while walking, and starts too soon.

Meza testified that when he administered the walk and turn test to Campos, the only clue he noted on his report was that Campos could not maintain balance while receiving instructions. Meza explained that when he reviewed the video, he also observed that Campos made an improper turn, stepped off the line, and stopped while walking. Meza explained that exhibiting two or more clues points to intoxication. When asked why only one clue was listed in his report, Meza

6

testified, "It was . . . a tough night, if you could imagine we had four with DWI's at once. We had a lot of paperwork. We had a lot of things we had to compile. We were just going back and forth; and it was just a lot of stuff to take in." Meza testified that the video is a better representation of Campos's performance on the field sobriety tests than Meza's report.

Meza also administered the one leg stand test to Campos. Meza testified that when administering the one leg stand, he asks the subject to put his feet together, arms down at his sides, and advises the subject that when he tells the subject to do so, the subject is to raise his leg approximately six inches off the ground, keeping both legs straight and raising the foot parallel to the ground. The subject is instructed to look at his elevated foot and count aloud until he is told to stop. Meza explained that he physically demonstrates the test for the subject while he is giving verbal instructions. After demonstrating, Meza asks the subject whether he understood the instructions and obtains a verbal response. Meza testified that there are four clues in the one leg stand: putting the foot down, using the arms for balance, swaying while balancing, and hopping. According to Meza, Campos exhibited two clues: Campos swayed while balancing and he put his foot down. Meza concluded that Campos was intoxicated and arrested him. Meza testified that after he arrested Campos, Campos refused to provide a blood sample.

The State rested at the conclusion of Meza's testimony. The jury found Campos guilty, and the trial judge assessed punishment at a $1000 fine and ninety days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed Campos on probation for one year.

ISSUES ONE AND TWO

In issue one, Campos challenges the admission into evidence[1] of the police officer's testimony concerning HGN testing of Campos. In issue two, Campos challenges the legal sufficiency of the evidence without the testimony regarding the HGN testing. Specifically, Campos contends Meza deliberately and in bad faith conducted the HGN test in a location where it could not be captured on video, and that the evidence is therefore unreliable because Campos's counsel could not review the manner in which Meza administered the test. We address issues one and two together.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a

[1]Campos filed a pretrial motion requesting exclusion of testimony regarding the HGN test administration and results, alleging that Officer Meza intentionally administered the test off camera to prevent counsel from determining whether the examination was properly administered; without reliability evidence, the test cannot meet the requirements for admission of expert testimony; and the testimony "is extremely prejudicial and yet has little probative value."

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 900 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17.

We review a trial court's ruling admitting evidence for abuse of discretion, and we must uphold the trial court's ruling if it falls "within the zone of reasonable disagreement." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court errs when its ruling admitting the evidence "is so clearly wrong as to lie

outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Rule 702 of the Texas Rules of Evidence states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. The Texas Court of Criminal Appeals has held that testimony concerning the HGN test is scientific evidence and is therefore admissible under Rule 702 if it meets the requirements set forth in *Kelly v. State*, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992). *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994). As discussed above, Campos contends the HGN testing evidence was inadmissible because the HGN test was conducted, intentionally and in bad faith, in a location where it could not be captured on video, thereby violating his due process rights.

The jury heard Meza testify that he is certified in conducting standardized field sobriety tests, including the HGN test, walk and turn test, and the one leg stand test. The jury also heard Meza testify that he is certified as a drug recognition expert. Meza explained in detail the procedure for conducting the HGN test, as well as the types of clues a subject may exhibit during HGN testing, and he

10

testified that he followed the standardized procedures in his HGN testing of Campos. No evidence was introduced to indicate that Meza acted intentionally or in bad faith when deciding to administer the HGN test out of the camera's view.

In support of his argument, Campos cites *State v. Rudd*, 255 S.W.3d 293 (Tex. App.—Waco 2008, pet. ref'd). However, *Rudd* did not hold that the failure to videotape the HGN test bars its admission into evidence. *Id*. at 301-02. Rather, the *Rudd* court merely upheld the trial court's order granting a motion to suppress HGN testimony because the trial court had determined that the officer who administered the HGN test lacked credibility on the issue of how the testing was conducted. *Id*. at 301. Campos cites no authorities holding that the lack of a video recording renders evidence of HGN testing inadmissible, or that lack of a video recording violates his right to due process, and we are aware of none. For all of these reasons, the trial court did not err by admitting testimony regarding the HGN testing into evidence. We overrule issue one.

We turn now to the legal sufficiency of the evidence. The State had the burden to prove that Campos was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2014). The jury heard evidence that Bearden stopped Campos and three other subjects who appeared to be racing. The jury also heard evidence that Campos had slurred

speech, bloodshot eyes, and a strong odor of alcoholic beverage on his breath. The jury heard Meza's testimony that Campos exhibited six out of a possible six clues on the HGN test, four out of eight clues on the walk and turn test, and two out of four clues on the one leg stand test. The jury heard testimony that Campos refused to provide a blood sample and viewed a video of Campos's performance of the walk and turn and one-leg stand tests. As we have previously explained, the trial court did not err by admitting evidence of the HGN testing. Regardless of whether or not the HGN evidence is considered, we conclude that a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *Penagraph*, 623 S.W.2d at 343. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 25, 2015
Opinion Delivered November 4, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

12